*In re* LEETE ESTATE

Docket No. 293979. Submitted November 5, 2010, at Grand Rapids. Decided November 16, 2010, at 9:15 a.m.

Appellant Frederick D. Leete IV filed a petition in the Emmet County Probate Court for the probate of the estate of his father, Frederick D. Leete III, and was appointed personal representative. Appellee Cynthia K. Sherman, as personal representative of the estate of Barbara K. Leete who was the wife of Frederick Leete III, sought a determination of the rights of Barbara's estate in the Leete estate. Barbara's death certificate showed that she had died at an unknown time on February 28, 2008, and her husband died at 9:10 p.m. on March 3, 2008. Both were residents of Indiana, but they owned property in Michigan. Appellee argued that Barbara's estate was entitled under MCL 700.2702(3) to a one-half interest in property the deceased couple had owned jointly as tenants by the entirety because Frederick did not survive Barbara by more than 120 hours. The court, Frederick R. Mulhauser, J., granted an adjournment to allow appellant time to substantiate his claim that Barbara had died more than 120 hours before her husband and subsequently entered an order on May 19, 2009, stating that if appellant failed to do so within 90 days, appellee's petition seeking half of any jointly owned property would be granted. The parties also signed the order, each noting that it was "approved as to form." After 90 days, appellant had produced no evidence regarding the time of Barbara's death, but instead relied on arguments that the property should be distributed consistently with Frederick's will, which stated that Barbara would inherit the property only if she survived him by 30 days. In the alternative, appellant argued that MCL 700.2702(3) was inapplicable because it became effective four years after the execution of the quitclaim deed by which the property was conveyed to Barbara and Frederick as tenants by the entirety. The court granted summary disposition in appellee's favor on August 20, 2009, finding no clear and convincing evidence that Frederick had survived Barbara by more than 120 hours and that Barbara's estate was entitled to half of any jointly owned property.

The Court of Appeals *held*:

1. Under MCR 2.602(B)(2), an order must be entered if its form is approved by all the parties and if, in the court's determination, it is in conformity with the court's decision. The May 19 order was valid because the parties agreed to its form and the court stated at the hearing that it would follow appellee's proposed course of action if both parties agreed to the form of the order. The August 20 order granting summary disposition was valid because it was entered pursuant to the procedure established in the probate court's earlier order, which the parties had approved, and it was in conformity with the court's decision that appellee's motion would be granted if appellant failed to produce evidence that Frederick had survived Barbara by more than 120 hours.

2. Under MCL 700.1303(1), probate courts have concurrent legal and equitable jurisdiction to determine property rights and interests and to ascertain if individuals have survived. Under MCL 700.1301(b), the Estates and Protected Individuals Code (EPIC) applies to a nonresident's property located in this state. Appellant identified Frederick's domicile as Michigan, but even if he had been an Indiana resident, EPIC applied to the property located in Michigan.

3. MCL 700.8101(2)(a), (d), and (e) provide that EPIC applies to a governing instrument executed before EPIC came into effect as long as the statute does not affect an accrued right and as long as the governing instrument does not contain a clear indication of contrary intent. There were no governing instruments in this case that indicated an explicit intent that some other law or rule should be applied. Appellant did not have an accrued right in the property at the time of Frederick's and Barbara's deaths because his interest was still subject to change.

4. Under MCL 700.2701 and 700.2702(3), a coowner must survive a deceased coowner by more than 120 hours to be entitled to property that passes due to a right of survivorship, unless a governing instrument expressly provides otherwise. If two coowners with rights of survivorship die within 120 hours of one another, the property is divided in equal shares between each coowner's estate. Survivorship must be proved by clear and convincing evidence. There were no governing instruments indicating a contrary intent, and there was no evidence showing that Frederick survived Barbara by more than 120 hours. Therefore, the probate court correctly ordered the property divided between the two estates.

Affirmed.

1. COURTS — ORDERS — VALIDITY.

A court must sign and enter an order if all parties approve the form of the order and, in the court's determination, the order is in conformity with the court's decision (MCR 2.602[B]).

2. ESTATES IN PROPERTY — ESTATES AND PROTECTED INDIVIDUALS CODE — NONRESIDENTS.

The Estates and Protected Individuals Code applies to a nonresident's property located in this state (MCL 700.1301[b]).

3. ESTATES IN PROPERTY — ESTATES AND PROTECTED INDIVIDUALS CODE — ACCRUED RIGHT.

The Estates and Protected Individuals Code applies to a governing instrument executed before the code came into effect as long as the code does not affect an accrued right and as long as the governing instrument, including a will or a deed, does not contain a clear indication of contrary intent (MCL 700.8101[2][a], [d], and [e]).

4. ESTATES IN PROPERTY — ESTATES AND PROTECTED INDIVIDUALS CODE — SIMULTANEOUS-DEATH PROVISION.

The Estates and Protected Individuals Code requires that a coowner survive a deceased coowner by more than 120 hours to be entitled to property that passes due to a right of survivorship, unless a governing instrument, including a will or a deed, expressly provides otherwise; if two coowners with rights of survivorship die within 120 hours of one another, the property is divided in equal shares between each coowner's estate; survivorship must be proved by clear and convincing evidence (MCL 700.2702[3]).

*Chalgian & Tripp Law Offices, PLLC* (by *Douglas G. Chalgian*), for Frederick D. Leete IV.

*Running, Wise & Ford, P.L.C.* (by *Kent E. Gerberding* and *Thomas A. Grier*), for Cynthia K. Sherman.

Before: M. J. KELLY, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM. In this probate case, we must decide whether the probate court properly entered an order pursuant to MCR 2.602(B)(2) and correctly interpreted

and applied the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, and its simultaneous-death provision, MCL 700.2702. Appellant, Frederick D. Leete IV, would have us conclude that the summary disposition order in favor of appellee, Cynthia K. Sherman, is void and that EPIC is inapplicable. We disagree and we affirm the probate court's order.

### I. BASIC FACTS

In 2008, Frederick DeLand Leete III and Barbara R. Leete, 80 and 75 years old respectively, had been married for 34 years and lived in Brownsburg, Indiana. They had no children from their marriage, but each had children from previous marriages. The Leetes owned, as tenants by the entirety, a cottage located in Mackinaw City in Emmet County, Michigan, which is the property that is the subject of this dispute. Apparently, Frederick had inherited this property, which had been in the Leete family for about 100 years. Nonetheless, Frederick and Barbara executed a quitclaim deed, dated October 29, 1996, which indicated that Frederick and Barbara would own, as tenants by the entirety,

[a]ll those portion of lots 59 and 60 of Block A in the Village of Mackinaw City, according to the recorded plat thereof, as lie North of the 15 ft. alley or service roadway bisecting said lots,

ALSO

Lot 61 of Block A in the Village of Mackinaw City, according to the recorded plat thereof, including all of said lot lying on both sides of the existing service road;

TOGETHER WITH ALL TANGIBLE PERSONAL PROPERTY IN OR ON SAID PREMISES[.]

On February 28, 2008, at an unknown time, Frederick allegedly left his vehicle running in the garage after

returning from the store. That same day, Barbara's daughter went to Barbara and Frederick's home and discovered Barbara dead and Frederick unconscious.[1] At the time, the car's engine was still warm, but it was no longer running because it had run out of gas. Frederick was taken to the hospital, but he expired on March 3, 2008, at 9:10 p.m. Barbara's death certificate lists her date of death as February 28, 2008, time "unknown." The cause of their deaths was carbon monoxide poisoning. Barbara died intestate, but Frederick had a will, dated September 20, 1974.

On May 23, 2008, appellant, who was Frederick's son, filed a petition for probate and appointment as the personal representative of Frederick's estate. Accordingly, Frederick's will was submitted to probate, and appellant was appointed personal representative to administer Frederick's estate. With regard to the disputed property, Frederick's will provided:

> I give and bequeath to my wife, Barbara R. Leete, if she shall survive me for a period of more than thirty (30) days, all real estate and improvements thereon of which I may die the owner or parr [sic] owner, specifically including the real estate and improvements located on Lot 62, Block "A", Mackinaw City, Emmett County, Michigan. In the event my said wife shall not survive me for a period of more than thirty (30) days, then I give and bequeath such real estate to my aforenamed children who survive me for a period of more than thirty (30) days, per stirpes and not per capita.

Appellant filed an inventory of Frederick's estate, listing among Frederick's assets the property located in Mackinaw City.

On November 24, 2008, appellee, who was Barbara's daughter and the personal representative of Barbara's

---

[1] The exact time Barbara and Frederick were discovered is unclear. The police report indicates that the event was reported about 1:40 p.m.

estate, filed an appearance in the case, giving notice to Frederick's estate that Barbara's estate sought a one-half interest in all jointly owned property because Frederick had not survived Barbara by more than 120 hours.[2] The legal basis for appellee's claim is MCL 700.2702(3) of EPIC, which provides:

> Except as provided in subsection (4), *if it is not estab-lished by clear and convincing evidence that 1 of 2 co-owners with right of survivorship survived the other co-owner by 120 hours, ¹/₂ of the co-owned property passes as if 1 had survived by 120 hours and ¹/₂ as if the other had survived by 120 hours.* If there are more than 2 co-owners and it is not established by clear and convincing evidence that at least 1 of them survived the others by 120 hours, the property passes in the proportion that 1 bears to the whole number of co-owners. For the purposes of this subsection, "co-owners with right of survivorship" includes joint ten-ants, *tenants by the entireties,* and other co-owners of property or accounts held under circumstances that en-titles 1 or more to the whole of the property or account on the death of the other or others. [Emphasis added.]

Accordingly, on February 23, 2009, appellee filed a petition for a determination of the rights of Barbara's estate and requested appellant to amend the inventory of Frederick's estate in conformance with the statute.

In response, appellant asserted that MCL 700.2702(3) was inapplicable and asked that the Macki-naw City property be distributed according to Freder-ick's will, as if Frederick had survived Barbara. Appel-lant alleged that Barbara died on February 27, 2008, and that Frederick, thus, died more than 120 hours

---

[2] The year 2008 was a leap year and, thus, the dates between Barbara's and Frederick's deaths included February 28 and 29, and March 1, 2, and 3. The longest length of time possible between Barbara's and Frederick's deaths would be 117 hours and 10 minutes. This calculation assumes that Barbara died at the earliest time possible on February 28, i.e., immedi-ately after the day began at midnight.

after Barbara's death. Appellant did not provide any evidence in support of this allegation. Appellant also argued that even if MCL 700.2702(3) was applicable, an exception in MCL 700.2702(4) applied and required that the property be divided according to the "governing instrument," Frederick's will. Appellant requested the court to adjourn the proceedings for appellant to substantiate his claim that Barbara died more than 120 hours before Frederick's death.

The probate court granted appellant's request for an adjournment. However, instead of producing evidence related to the time of Barbara's death, appellant moved for summary disposition under MCR 2.116(C)(8) and (10). Appellant asserted that the property should be distributed consistently with Frederick's will and that even if the will were not the "governing instrument," MCL 700.2702(3) was inapplicable because it became effective four years after the deed was executed. In appellant's view, once Barbara died the property passed, in whole, to Frederick and his will precluded the property's division.

Appellee countered that Barbara's estate was entitled to summary disposition based on MCR 2.116(I)(2) and (C)(10). Appellee argued that EPIC explicitly applies to the factual circumstances at issue and that the deed, not Frederick's will, was the governing instrument at issue. Appellee further asserted that because Frederick and Barbara died within 120 hours of each other, one-half the interest of the Mackinaw City property vested in Barbara's estate under MCL 700.2702(3). In response, appellant argued that his interpretation of EPIC was correct. However, appellant asked for additional time to pursue factual evidence with regard to the time of Barbara's death.

At the motion hearing, the probate court initially denied both parties' motions for summary disposition. However, appellee's attorney presented to the court an order that the court indicated it would "follow" and sign if both parties agreed to "the form of that order." The order provided, in relevant part:

> IT IS HEREBY ORDERED that unless Frederick D. Leete IV, Personal Representative of the Estate of Frederick Deland Leete III, Deceased, within [90] days from the date hereof, submits evidence that Frederick Deland Leete, III, survived Barbara R. Leete by 120 hours, the relief requested by the Petition and Motion For Summary Disposition filed by Cynthia K. Sherman, Personal Representative of the Estate of Barbara R. Leete, Deceased, shall be GRANTED, and the attached proposed Order shall be entered.
>
> In the event such evidence of survival is submitted, Petitioner shall have [90] days to respond to such evidence, and the Court, if necessary, may schedule an evidentiary hearing to resolve the dispute.

Both attorneys for the parties signed the order "approved as to form," and the probate court entered the order on May 19, 2009.

Ninety days later, on August 20, 2009, the court entered an order granting summary disposition in appellee's favor. It found "no clear and convincing evidence" that Frederick had survived Barbara by 120 hours and that Barbara's estate was entitled to half of any coowned property pursuant to MCL 700.2702(3). It ordered appellant to amend his inventory accordingly. This appeal followed.

## II. ENTRY OF THE ORDER

Appellant first argues that the probate court's August 20 order is void because it did not meet the

requirements of MCR 2.602(B). We disagree. Appellant never raised this issue below, the probate court did not consider or decide this issue, and the matter is unpreserved for appeal. *People v Metamora Water Serv, Inc,* 276 Mich App 376, 382; 741 NW2d 61 (2007). Thus, this Court is not required to consider appellant's argument. See *Royal Prop Group, LLC v Prime Ins Syndicate, Inc,* 267 Mich App 708, 720-721; 706 NW2d 426 (2005). We also note that a party may not successfully obtain appellate relief on the basis of a position contrary to that which the party advanced in the lower court. *Phinney v Perlmutter,* 222 Mich App 513, 544; 564 NW2d 532 (1997). Arguably, we should thus dismiss appellant's argument at the outset because appellant affirmatively agreed to the entry of the May 19 order, which, by its operation, resulted in the entry of the August 20 order that he now claims is void. Nonetheless, we will review appellant's argument because this Court may review an unpreserved issue if it presents a question of law and all the facts necessary for its resolution are before the Court. *Rudolph Steiner Sch of Ann Arbor v Ann Arbor Charter Twp,* 237 Mich App 721, 740; 605 NW2d 18 (1999).

A trial court's interpretation and application of a court rule is a question of law that this Court reviews de novo. See *Marketos v American Employers Ins Co,* 465 Mich 407, 412; 633 NW2d 371 (2001). Court rules are subject to the same rules of construction as statutes. *Vyletel-Rivard v Rivard,* 286 Mich App 13, 21; 777 NW2d 722 (2009). Our goal in interpreting the meaning of a court rule is to give effect to the intent of the drafters. *Id.* We first examine the language used. *Kloian v Domino's Pizza, LLC,* 273 Mich App 449, 458; 733 NW2d 766 (2006). The drafters are assumed to have intended the effect of the language plainly expressed, and we must give every word its plain and ordinary

meaning. *Brausch v Brausch*, 283 Mich App 339, 348; 770 NW2d 77 (2009). If the language is plain and unambiguous, then we must apply the language as written. *Vyletel-Rivard*, 286 Mich App at 22. In such instances, judicial construction is neither necessary nor permitted. *Kloian*, 273 Mich App at 458.

At issue in the present matter is MCR 2.602, which governs the "entry of judgments and orders." MCR 2.602(B), titled "Procedure of Entry of Judgments and Orders," provides:

> An order or judgment *shall be entered by one of the following methods*:
>
> (1) The court may sign the judgment or order at the time it grants the relief provided by the judgment or order.
>
> (2) The court shall sign the judgment or order *when its form is approved by all the parties and if*, in the court's determination, *it comports with the court's decision*.
>
> (3) Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. The party must file with the court clerk the original of the proposed judgment or order and proof of its service on the other parties.
>
> * * *
>
> (4) A party may prepare a proposed judgment or order and notice it for settlement before the court. [Emphasis added.]

Thus, under MCR 2.602(B), for an order to be valid, it must be entered in one of four ways: it may be signed at the time relief is granted; it may be signed when its "form" is approved by all the parties and if, in the

court's determination, it comports with the court's decision; it may be entered pursuant to the "seven-day rule"; or, it may be prepared and noticed for settlement before the court.

The only relevant subrule of MCR 2.602(B) for purposes of this appeal is MCR 2.602(B)(2). The language of that provision is plain and unambiguous. An order must be signed and entered if two requirements are met: (1) the order's "form" is approved by all the parties and (2) in the court's determination, the order is in conformity with the court's decision. The term "form" is not defined by the court rule and, in such instances, this Court may rely on dictionary definitions to give terms their plain and ordinary meanings. See *Kloian*, 273 Mich App at 458-459. Black's Law Dictionary (9th ed) defines "form" as "[t]he outer shape or structure of something, as distinguished from its substance or matter," or as an "[e]stablished . . . procedure." Thus, for the first condition of MCR 2.602(B)(2) to be met, the parties must agree regarding the order's structure or, if relevant, any procedure that it may establish for the disposition of the matter before the court.

Although the probate court initially denied both parties' motions for summary disposition at the motion hearing on May 19, 2009, indicating that the case needed "to be developed a little more," it retracted this initial disposition and adopted the parties' suggested course of proceeding with the matter. Specifically, appellee's counsel informed the court that he had presented appellant's counsel with a proposed form and order, indicating that if, within 90 days of the motion hearing, appellant did not present clear and convincing evidence that Frederick had died more than 120 hours after Barbara, appellee's motion for summary disposition would be granted. The probate court then stated

that it would follow this suggestion and would sign the proposed order if "both [parties] agree to the form of th[e] order . . . ." Subsequently, the court signed an order consistent with appellee's suggestion, which both parties' counsels also signed, each writing above his or her signature, "approved as to form."

Given these facts, the probate court entered the May 19 order consistently with MCR 2.602(B)(2). The first requirement of MCR 2.602(B)(2) was met: both parties agreed to the form of the order, which in this case involved the entry of a subsequent order granting summary disposition for appellee if certain conditions were not met. Counsels' signatures on the order, juxtaposed with the phrase "approved as to form" above each signature, are evidence that the order's form was approved by all parties. Moreover, the second requirement of MCR 2.602(B)(2) was also met, given the court's unequivocal statement at the motion hearing that it would follow appellee's suggested course of action so long as "both [parties] agree to the form of th[e] order . . . ." The parties did so agree, and the court signed the order. In addition, because a court speaks through its written orders, the court's signature on the May 19 order implies that the substance of the order was in conformity with its decision to follow appellee's suggested course of action. Accordingly, the May 19 order was properly entered under MCR 2.602(B)(2).

Further, because the May 19 order was validly entered and the August 20 order was entered pursuant to the procedure established in the May 19 order, we also conclude that the August 20 order was validly entered under the same subrule. As already explained, the August 20 order was entered by operation of the procedure set forth in the May 19 order. It would be illogical for us to conclude that the August 20 order was not

validly entered pursuant to MCR 2.602(B)(2), given that the parties agreed to the form of the May 19 order, which specifically contemplated entry of the August 20 order and was signed by the court consistently with its decision. In other words, under the circumstances of this case, the parties' initial agreement about form in the first order was imputed to all subsequent orders entered consistently with that original agreement. Thus, because the parties agreed with respect to form and the order was consistent with the court's decision, the August 20 order was validly entered pursuant to MCR 2.602(B)(2).

Lastly, for us to declare that the August 20 order was invalidly entered would allow litigants to haphazardly agree to the entry of orders that envision the entry of additional orders and later escape the effect of those subsequently entered orders on appeal by declaring the later orders void. The outcome would be a waste of judicial resources and would unnecessarily increase the cost of litigation to the parties' detriment. Moreover, we note, contrary to appellant's argument, that nothing in the plain language of MCR 2.602(B)(2) explicitly prohibits the type of conditional order that was entered in this matter. Nor do we agree with appellant's argument that the order was not in conformity with the probate court's decision. Accordingly, we conclude that both the May 19 and August 20 orders were validly entered pursuant to MCR 2.602(B)(2).

### III. SUMMARY DISPOSITION

Appellant next contends that the probate court erred by granting appellee summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Royal Prop Group*, 267 Mich App at 713. Because the probate court's August 20 order necessarily

relied on facts outside the pleadings, we will treat the court's grant of summary disposition as based on MCR 2.116(C)(10). A motion is properly granted under this subrule if no genuine issue of material facts exists and the moving party is entitled to judgment as a matter of law. *Royal Prop Group*, 267 Mich App at 713. In reviewing a lower court's decision, we must view all the submitted admissible evidence in a light most favorable to the nonmoving party. *In re Smith Estate*, 252 Mich App 120, 123; 651 NW2d 153 (2002). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

At the outset, we note that appellant's argument on appeal is responsive not to the existence of a factual question, but to an interpretation of the applicable law. Specifically, appellant posits that we should reverse the probate court's August 20 order because it made no findings about the applicability and effect of Indiana law, whether EPIC applied, whether a contrary intent precluded the application of MCL 700.2702(3), and whether an exception to the 120-hour rule applied, see MCL 700.2702(4). Appellant also asserts that the probate court applied the incorrect standard of proof.

We disagree that reversal is required on the basis of the probate court's alleged failure to make any conclusions with regard to the applicable law. This position is without support in the record. Rather, the probate court—by adopting appellee's suggested course of action at the May 19 motion hearing, which appellant agreed to in form only, and by entering the August 20 order in conformity therewith—concluded that appellee's interpretation of the relevant statutes was correct

and narrowed the dispositive issue to whether Frederick passed away more than 120 hours after Barbara under MCL 700.2702(3). Thus, our review is limited to whether the probate court's interpretation of EPIC was correct, which is a question of law we review de novo. *In re Clarence W Temple & Florence A Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). The same rules of construction apply as those discussed earlier in reference to court rules.

### A. DOES MICHIGAN PROBATE LAW APPLY?

In 1998, the Michigan Legislature enacted EPIC, 1998 PA 386, which became effective April 1, 2000. The new law, which repealed and replaced the Revised Probate Code, 1978 PA 642, MCL 700.1 *et seq.*, was intended to modernize probate practice by simplifying and clarifying the law concerning decedents' affairs and by creating a more efficient probate system. MCL 700.1201; MCL 700.1303(3). Consistently with this purpose, the Legislature expanded the probate court's powers and included "provisions designed to reduce court involvement in trusts and estates." *In re Nestorovski Estate*, 283 Mich App 177, 190; 769 NW2d 720 (2009). Accordingly, EPIC confers on Michigan probate courts the exclusive legal and equitable jurisdiction of matters that "relate[] to the settlement of a deceased individual's estate, whether [the decedent died] testate or intestate, [if the decedent] was at the time of death domiciled in the county or was at the time of death domiciled out of state leaving an estate within the county to be administered . . . .' " MCL 700.1302; *Nestorovski*, 283 Mich App at 189. In addition, MCL 700.1303(1) provides probate courts with further jurisdictional authority, which includes, in part, concurrent legal and equitable jurisdiction to determine a property

right or interest, authorize the partition of property, authorize or compel specific performance of a contract in a joint or mutual will, and ascertain if individuals have survived. EPIC also explicitly states that it applies to "[a] nonresident's property that is located in this state . . . ." MCL 700.1301(b).

Appellant contends that the probate court's failure to consider the effect and application of Indiana laws of survivorship requires reversal and remand. We disagree. Implicit in the probate court's decision was the conclusion that Indiana law was inapplicable to the administration of Frederick's estate and that Michigan law was the correct choice of law. We see no error in this ruling. Although Frederick had a residence, and died, in Indiana, appellant filed an affidavit of domicile with the probate court that listed Frederick's domicile as 804 Lakeside Drive, Mackinaw City, Michigan. Thus, application of EPIC to the administration of Frederick's estate was appropriate. See MCL 700.1301(a).

Even if we were to assume that Frederick was an Indiana resident, we would reach the same conclusion. Michigan probate courts have jurisdiction over property located in this state, including property that is owned by a nonresident decedent, MCL 700.1302, and EPIC explicitly applies to a nonresident's property located in Michigan, MCL 700.1301(b). Moreover, neither Frederick's will nor any other documentary evidence evinces an intent that Indiana law should apply to the administration of his estate. And while Indiana undoubtedly has some interest in the administration of the estates of its deceased residents, Michigan's interest in the present matter is greater, given the fact that the property at issue is located in Michigan and in value comprises the bulk of the assets of Frederick's estate. See *Frydrych v Wentland*, 252 Mich App 360, 363-364;

652 NW2d 483 (2002) (explaining choice-of-law analysis). Thus, application of EPIC, as opposed to Indiana law, was appropriate.

### B. DOES EPIC OR FORMER LAW APPLY?

Appellant next argues that EPIC is inapplicable because the deed and Frederick's will predate EPIC's effective date and because its application would affect an "accrued right." We disagree. EPIC specifically "applies to a governing instrument executed by a decedent dying after [April 1, 2000, as long as it does not] impair an accrued right . . . ." MCL 700.8101(2)(a) and (d). Further, "[a] rule of construction . . . provided in this act applies to a governing instrument executed before [April 1, 2000] unless there is a clear indication of a contrary intent." MCL 700.8101(2)(e). Thus, EPIC applies to a governing instrument executed before EPIC came into effect, as long as it does not affect an accrued right and as long as the governing instrument does not contain a contrary intent. See *Temple Marital Trust*, 278 Mich App at 127-128. Under EPIC, "governing instrument" is defined as including both a will and a deed. MCL 700.1104(k).

The governing instrument here, be it Frederick's will or the deed, was created before EPIC became effective, but neither instrument contains an explicit intent that EPIC should not apply. There is no mention in either instrument that some other law or rule should be enforced. And although both instruments were created before EPIC's effective date of April 1, 2000, no accrued right therein would be impaired by applying EPIC. This Court has recognized that an accrued right is similar to one that has vested. *Smith Estate*, 252 Mich App at 127-128. However, in the context of EPIC, "an 'accrued right' . . . mean[s] something other than a right under a

will upon the testator's death . . . [and] is a legal right to the exclusion of any other right or claim to it." *Id.* at 128-129. In other words, even though a devise under a will vests upon the death of the testator, it is not an accrued right under EPIC because "it is not so fixed that it cannot be changed." *Id.* at 128. This understanding of the term "accrued right" is consistent with MCL 700.8101(2)(d), which states, in part, "If a right is acquired . . . upon the expiration of a prescribed period of time that commences to run by the provision of a statute before [April 1, 2000], the provision remains in force with respect to that right." Appellant obtained no fixed or accrued right by way of Frederick's will before April 1, 2000. See MCL 700.8101(2)(d). Nor did he acquire such a right at the time of Frederick's and Barbara's deaths because his interest in the Mackinaw City property was still subject to change. Accordingly, EPIC governs the present matter, and the probate court did not err by concluding the same.

### C. DOES EPIC'S 120-HOUR RULE APPLY?

At the outset, we note that the 120-hour rule, or simultaneous-death provision, is not new to Michigan probate law. Its origin is related to the problematic administration of the common-law rule that an heir or devisee had to survive the testator by only an instant in order to receive a donative transfer under the testator's will. 1 Restatement Property, 3d, Wills and Other Donative Transfers, § 1.2, pp 32-33. Administration of this common-law concept became problematic in the early twentieth century when vehicular accidents resulting in simultaneous deaths became more common. *Id.* at 33. Thus, in the context of simultaneous deaths, some new rule was necessary to ensure that each decedent's property passed to his or her heirs and avoid

the expense of double probate administration. *Id.* Michigan first adopted a survival requirement in 1941, see Uniform Simultaneous Death Act, 1941 PA 73, former MCL 720.101 through 720.108; and a survival-period requirement of 120 hours in 1978, see Revised Probate Code, 1978 PA 642, specifically former MCL 700.107 and 700.132. The latter requirement is meant to ensure that a decedent's property passes to a benefi- ciary who can personally benefit, as opposed to a beneficiary who became deceased a short time later, meaning that the property would ultimately pass to that beneficiary's heirs. 1 Restatement, § 1.2, p 34.

In Michigan, the 120-hour survival requirement did not always apply to nonprobate transfers, such as joint estates with rights of survivorship. *In re VanConett Estate*, 262 Mich App 660, 667-668; 687 NW2d 167 (2004) (explaining that jointly held property with rights of survivorship typically passes automatically to the surviving tenant upon one tenant's death and is not subject to devise under a will). While the 120-hour rule was only applicable to wills under the Revised Probate Code, see former MCL 700.132, EPIC expanded the 120-hour rule to cover all events, governing instruments, and coownerships. Jacobs, *EPIC 386 PA 1998—Rules of construction and interpretation for transfers upon death*, 79 Mich B J 345 (2000); compare former MCL 700.107, former MCL 700.132, and MCL 700.2702.

Appellant asserts that EPIC's 120-hour rule is inapplicable because (1) a "contrary intention" exists, embodied in Frederick's will, see MCL 700.2701, and (2) an exception to the 120-hour rule applies, see MCL 700.2702(4).

### 1. MCL 700.2701

The provisions appellant relies on, MCL 700.2701 and MCL 700.2702, are in EPIC's article II (regarding

intestacy, wills, and donative transfers) part 7 (regarding rules of construction applicable to governing instruments). MCL 700.2701 provides:

> *In the absence of a finding of a contrary intention, the rules of construction in this part control the construction of a governing instrument.* The rules of construction in this part apply to a governing instrument unless the application of a particular section is limited by its terms to a specific type of provision or governing instrument. [Emphasis added.]

MCL 700.1104(k) defines "governing instrument" as used in EPIC to mean

> *a deed; will*; trust; insurance or annuity policy; account with POD [pay on death] designation; security registered in beneficiary form (TOD [transfer on death]); pension, profit-sharing, retirement, or similar benefit plan; instrument creating or exercising a power of appointment or a power of attorney; or dispositive, appointive, or nominative instrument of any similar type. [Emphasis added.]

Clearly, EPIC defines "governing instrument" broadly. The term includes both a will and a deed. MCL 700.2701 is plain and unambiguous. It indicates that the rules of construction articulated in part 7 of EPIC, as they pertain to governing instruments, will not apply if the relevant governing instrument contains a contrary intent. Thus, there must be some explicit recognition in that instrument that EPIC will not apply. This intent may be manifested, for example, by a specific directive that EPIC does not apply or that other rules apply, such as those articulated in the former Revised Probate Code or in another state's probate code. In this case, neither the deed nor the will, nor any other instrument, declares such a contrary intent. Both instruments are silent on the matter. Thus, MCL 700.2701 does not function to preclude application of

part 7 of EPIC, which includes the simultaneous-death provision articulated in MCL 700.2702.

### 2. MCL 700.2702

The section immediately following MCL 700.2701 is EPIC's simultaneous-death provision. MCL 700.2702(3), provides, in relevant part:

> Except as provided in subsection (4), *if it is not established by clear and convincing evidence that 1 of 2 co-owners with right of survivorship survived the other co-owner by 120 hours, ¹/₂ of the co-owned property passes as if 1 had survived by 120 hours and ¹/₂ as if the other had survived by 120 hours.* If there are more than 2 co-owners and it is not established by clear and convincing evidence that at least 1 of them survived the others by 120 hours, the property passes in the proportion that 1 bears to the whole number of co-owners. For the purposes of this subsection, "co-owners with right of survivorship" includes joint tenants, tenants by the entireties, and other co-owners of property or accounts held under circumstances that entitles 1 or more to the whole of the property or account on the death of the other or others. [Emphasis added.]

There is no dispute between the parties regarding the meaning of this language and, indeed, we are of the view that this language is clear. If two coowners with rights of survivorship die within 120 hours of one another, then the property does not pass in whole to the last surviving coowner but is divided in equal shares between each coowner's estate. Conversely, if clear and convincing evidence shows that one coowner survived the other by 120 hours or more, then the estate of the longer surviving coowner receives the whole property consistently with his or her right of survivorship.[3]

---

[3] The "clear and convincing" evidence standard in the context of the simultaneous-death provision was newly included under EPIC. Compare

MCL 700.2702(4) provides a list of exceptions to the general rule established in MCL 700.2702(3). It states:

> Survival by 120 hours is not required under any of the following circumstances:

> (a) The governing instrument contains language dealing explicitly with simultaneous deaths or deaths in a common disaster and that language is operable under the facts of the case. Language dealing explicitly with simultaneous deaths includes language in a governing instrument that creates a presumption that applies if the evidence is not sufficient to determine the order of deaths.

> (b) The governing instrument expressly indicates that an individual is not required to survive an event, including the death of another individual, by any specified period or expressly requires the individual to survive the event by a specified period. Survival of the event or the specified period, however, must be established by clear and convincing evidence.

> (c) The imposition of a 120-hour requirement of survival would cause a nonvested property interest or a power of appointment to fail to qualify for validity under section 2(1)(a), (2)(a), or (3)(a) of the uniform statutory rule against perpetuities, 1988 PA 418, MCL 554.72, or to become invalid under section 2(1)(b), (2)(b), or (3)(b) of the uniform statutory rule against perpetuities, 1988 PA 418, MCL 554.72.

> (d) The application of a 120-hour requirement of survival to multiple governing instruments would result in an unintended failure or duplication of a disposition. Survival, however, must be established by clear and convincing evidence.

Thus, under these limited, articulated circumstances, the 120-hour rule is inapplicable.

---

former MCL 700.107 and former MCL 700.132 with MCL 700.2702. This evidentiary burden serves to resolve doubtful questions in favor of nonsurvival and better serves the decedent's intent that his or her property pass to heirs and only to persons who can personally benefit from it. 1 Restatement, § 1.2, p 35.

Because there is no evidence in the present case demonstrating that Frederick survived Barbara by more than 120 hours—and appellant identifies no such evidence on appeal, in the record or otherwise, and makes no argument relating to the substance of this issue—the 120-hour rule applies and one-half of the Mackinaw City property vested in Barbara's estate, unless appellant can substantiate that one of the exceptions in MCL 700.2702(4) is applicable. The only exception that appellant argues is applicable is MCL 700.2702(4)(d). However, we disagree. While this case does involve multiple governing instruments— Frederick's 1974 will and the 1996 deed—we are not of the view that application of the 120-hour rule would result in an "unintended failure . . . of a disposition." Certainly, Frederick indicated in his 1974 will that Barbara must survive him by more than 30 days in order to receive a full ownership interest in the Mackinaw City property. At the time, Frederick was presumably the sole owner of the property. However, Frederick and Barbara executed a quitclaim deed in 1996 that conveyed the Mackinaw City property to Barbara and Frederick as tenants by the entirety. Clearly, as is evident from the execution of the deed, Frederick's intent with respect to the disposition of the Mackinaw City property changed in 1996. "A conveyance by a testator of . . . his property after making his will revokes the will." *In re Smith*, 191 Mich 694, 701; 158 NW 148 (1916); cf. MCL 700.2507. Thus, a portion of Frederick's will was effectively revoked with respect to this particular property because the conveyance was inconsistent with the will's provision regarding the disposition of the Mackinaw City property at Frederick's death. And, accordingly, it cannot be said that the application of the 120-hour rule under the present

circumstances would result in an unintended failure of disposition. Rather, adherence to the 1974 will would have that effect.

Accordingly, appellant has failed to show that any of the exceptions to the 120-hour rule are applicable. The trial court did not err by applying the 120-hour rule to the present circumstances. And because clear and convincing evidence does not show that Frederick survived Barbara by 120 hours or more, the Mackinaw City property is properly divided between their respective estates consistently with MCL 700.2702(3).

### D. DID THE PROBATE COURT APPLY THE WRONG STANDARD OF PROOF?

Finally, we also reject appellant's last argument that the probate court applied the incorrect standard of proof. Appellant takes issues with the court's written statement in its August 20 order, which stated, "There is no clear and convincing evidence that Frederick Deland Leete, III, survived Barbara R. Leete by 120 hours . . . ." However, appellants's allegation takes the probate court's statement out of context. The clear and convincing evidentiary burden is mandated by MCL 700.2702(1), which provides, in part: "[A]n individual who is not established by clear and convincing evidence to have survived an event, including the death of another individual, by 120 hours is considered to have predeceased the event." This provision establishes a party's burden of proof with regard to the 120-hour rule. Thus, when the probate court's order is read as a whole, it means that appellant failed to bring forth any clear and convincing evidence, as required by the statute, that would create a question of fact, when viewed in a light most favorable to appellant, that Frederick survived Barbara by 120 hours. There is no indication

in the probate court's August 20 order that it applied the incorrect standard of proof. The trial court properly granted summary disposition in appellee's favor.

Affirmed.