*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Conservatorship of MARY LOUISE MONTGOMERY.

---

MARIAN MONTGOMERY,

      Defendant-Appellant,

and

HERBERT MONTGOMERY, GREGORY MONTGOMERY, LEWIS MONTGOMERY, DOROTHY WRIGHT, and SOCIAL SECURITY ADMINISTRATION,

      Other Parties,

v

RITA HICKS, LAJUNE TABRON, and BRENDA WILLIAMS,

      Appellees.

UNPUBLISHED
June 22, 2023

No. 360280
Oakland Probate Court
LC No. 2013-354173-CA

---

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

PER CURIAM.

Appellant Marian Montgomery is one of Mary Louise Montgomery's eight children. Three of Marian's siblings—Rita Hicks, LaJune Tabron, and Brenda Williams—served as Mary's coconservators for a six-month period before her death. Marian objected to the coconservators' first and final account, arguing that it was two years late, incomplete, and inaccurate. The probate court found the coconservators' testimony and documentary evidence credible and allowed the first and final account. In doing so, the court declined to address Marian's allegations that the coconservators breached their fiduciary duties before and after Mary's death, stating that the conservatorship ended with Mary's death. We find that the probate court erred by holding that it lacked the authority to address Marian's claims of breach of fiduciary duties, but we affirm the

-1-

approval of the first and final account because Marian failed to present any evidence to rebut the coconservators' testimony and evidence.

## I. FACTUAL BACKGROUND

Marian petitioned the probate court in 2013 to appoint a conservator for her mother due to symptoms of dementia. Pursuant to the agreement of the interested parties, the probate court appointed Marian as Mary's conservator. Following Marian's appointment, she filed an inventory of Mary's assets, which included a home in Oak Park, a 2008 Chrysler Sebring, a mink coat she valued at $8,000, unspecified "household furnishings" she valued at $2,000, a life insurance policy, an annuity, two savings accounts, a checking account, and a certificate of deposit. At the time, Mary's assets allegedly had a total value of $86,888.[1] In March 2015, Marian filed a first account of fiduciary for the period of January 1, 2014 through January 1, 2015, which reported a $85,278.00 balance of assets on hand.

Turmoil among the siblings resulted in Marian's suspension as conservator in July 2015. The probate court appointed a public administrator, Jennifer Carney, to serve as the special conservator.[2] In September 2015, Carney filed an inventory of Mary's assets, which included a checking account, a savings account, a certificate of deposit, the 2008 Chrysler Sebring, and the mink coat with an "unknown" value. Carney amended the inventory in October 2015 to include another savings account, the Oak Park home, and three life insurance policies. The amended inventory reflected that the total value of Mary's assets was $40,338.37. Marian filed objections to Carney's amended inventory, arguing that it omitted several household items[3] and contained inaccurate values of certain items such as the fur coat and the Oak Park home.

In September 2016, Carney filed an amended inventory and a first and final account as special conservator for the period of July 13, 2015, through March 31, 2016. In addition to the items reflected in the previous inventory, the amended inventory included general personal property (fur coat, other clothing, and household property) of an "unknown" value, and increased the value of the Oak Park home to $51,200 to reflect Mary's full ownership interest during her lifetime. The total value of Mary's assets was reported as $65,938.37. The first and final account of fiduciary reported a $54,735.82 balance of assets on hand.[4] Marian filed objections, asserting

---

[1] A few weeks later, Marian amended the inventory to reflect a lower total value of $86,741.

[2] In March 2016, Marian was removed as conservator and Carney was appointed as the sole successor conservator. Marian appealed the probate court's order, but this Court affirmed. *In re Conservatorship of Montgomery*, unpublished per curiam opinion of the Court of Appeals, issued August 22, 2017 (Docket No. 332507).

[3] Marian argued that Carney failed to include "Mary's washer, dryer, refrigerator, clothing, china, bedroom set, additional fur coats, and costume jewelry" that Marian valued at $2,000.

[4] The itemized assets remaining included a checking account, the Oak Park home, the three life insurance policies, and general personal property (fur coat, other clothing, and household property)

that the list of assets was based on an incomplete and inaccurate inventory. The probate court overruled the objections regarding the inventory and allowed the first and final account. Marian did not appeal the court's order.

In August 2017, Carney filed a first account as the successor conservator for the period of April 1, 2016 through March 31, 2017. The account reported a $51,529.27 balance of assets on hand.[5] No objections were filed, and the probate court allowed the account. Marian did not appeal the court's order.

In August 2018, Carney resigned as conservator and nominated LaJune, Rita, and Brenda to serve as coconservators. The probate court approved the conservatorship modification in September 2018. The coconservators began their appointment on January 30, 2019.

In February 2019, Carney filed a second account for the period of April 1, 2017 through March 31, 2018, which she amended in April 2019.[6] The amended second account reported a $36,645.34 balance of assets on hand[7] and claimed $6,346.25 in fiduciary and attorney's fees. No objections were filed, and the probate court allowed the account, including the fees. Marian did not appeal the court's order.

In February 2019, Carney filed a third and final account for the period of April 1, 2018 through September 19, 2019, which she amended in April 2019.[8] The amended third and final account reported a $37,847.72 balance of assets on hand,[9] and $4,875.50 in fiduciary and attorney's fees. No objections were filed. The probate court allowed the account, but limited the fiduciary and attorney's fees to $3,801.72. Marian did not appeal the court's order.

In March 2019, the coconservators filed an inventory of Mary's assets, which included a checking account still under Carney's control and the Oak Park property. The total value of the assets was $40,096.20. No objections to the inventory were filed.

Mary died on June 5, 2019. Nearly two years after her death, the coconservators filed a first and final account for the period of January 30, 2019 through June 5, 2019. The account

---

of an "unknown" value. The account reflected that a personal savings account was closed, the certificate of deposit was liquidated, and the 2008 Chrysler Sebring was sold.

[5] The itemized assets remaining included a checking account, the Oak Park home valued at $51,200, and general personal property of an "unknown" value.

[6] The second account omitted the Oak Park home from the itemized list of assets remaining; the amended second account included the home and updated other values.

[7] The assets remaining were a checking account and the Oak Park property with a decreased value of $33,500.

[8] The third and final account omitted the Oak Park home from the itemized list of assets remaining; the amended third and final account included the home and updated other values.

[9] The assets remaining were a checking account and the Oak Park property.

reported $1,833.32 in income and other receipts, $39,283.87 in expenses and disbursements,[10] and a $2,645.65 balance of assets on hand.[11]  Marian filed objections to the account, asserting that it was late, incomplete, and inaccurate.  Following a hearing, the probate court denied the coconservators' petition to allow the first and final account.

In September 2021, the coconservators filed an updated first and final account for the period of January 30, 2019 through June 5, 2019.  The account reported $8,152.07 in income and other receipts, $39,283.87 in expenses and disbursements, and a $8,964.15 balance of assets on hand.[12]  Once again, Marian filed objections to the account, asserting that it was late, incomplete, and inaccurate.  Marian raised 26 objections asserting that the coconservators failed to account for all the income, all the expenses, and for several of Mary's assets, including: (1) a certificate of deposit, (2) three life insurance policies, (3) a mink coat allegedly valued at $12,000, (4) a vacuum cleaner, (5) two rings, (6) a diamond and pearl enhancer, (7) china, and (8) wardrobe items.  Marian alleged that the coconservators breached their fiduciary duties by filing a late inventory, filing a late final account, failing to serve the inventory on the interested parties, omitting assets from the inventory, and comingling Mary's funds in Brenda's personal account held jointly with her son.  Marian requested that the probate court compel the coconservators to prepare and file a proper inventory and account.  The coconservators argued that they were not required to account for the expenses that they paid on Mary's behalf from their personal finances.  They further asserted that the personal belongings allegedly omitted from the account remained in the Oak Park home and maintained they did not have control of the items during the conservatorship.  The probate court held a hearing on Marian's objections and ultimately overruled all of them.  The court declined to address Marian's allegations that the coconservators breached their fiduciary duties, stating that their duties ended with Mary's death.  This appeal followed.

## II.  ANALYSIS

### A.  STANDARDS OF REVIEW

We review a probate court's dispositional rulings for an abuse of discretion.  *In re Estate of Huntington*, 339 Mich App 8, 17; 981 NW2d 72 (2021).  "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes."  *Id*. (cleaned up).  We review for clear error the factual findings underlying a probate court's decision.  *Id*.  A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake was made, even when there is evidence to support the probate court's finding.  *In re*

---

[10] The account reported $5,783.87 in legal fees paid to Carney and $33,500 for the ownership transfer of the Oak Park home at Mary's death because it was owned with her daughter Brenda as joint tenants with rights of survivorship.

[11] The only remaining asset listed was the checking account previously designated as being under Carney's control.

[12] The assets remaining were the checking account previously under Carney's control with a balance of $2,645.65 and a bank account in Brenda's name with a balance of $6,318.50, which represented social security payments Brenda received as Mary's representative payee after Mary's death.

*Conservatorship of Murray*, 336 Mich App 234, 239-240; 970 NW2d 372 (2021). Because the probate court has a unique vantage point regarding witnesses, testimony, and other influencing factors, we defer to the probate court on matters of credibility and give broad deference to the court's findings. *Id*. at 240. Finally, the interpretation and application of court rules and statutes are questions of law that we review de novo. *In re Leete Estate*, 290 Mich App 647, 657; 803 NW2d 889 (2010).

## B. FINAL ACCOUNTING

Marian argues that the probate court erred by approving the coconservators' first and final account because it was late, incomplete, and inaccurate. We disagree.

Marian raised 26 objections to the coconservators' first and final account, but withdrew two of the objections at the hearing. The probate court addressed each of Marian's objections, overruled all of them, and allowed the account. Marian does not address all her individual objections in her appellate brief. Instead, she devotes the majority of her argument to allegations that the coconservators breached their fiduciary duties by neglecting Mary's health, property, and assets. Specifically, Marian alleges that the coconservators allowed Carney to control a bank account after her resignation, filed their inventory late, filed their first and final account late, failed to take control of Mary's personal assets (including jewelry and a fur coat) while she was alive, neglected Mary's heath, and improperly disposed of her personal assets after her death. Marian maintains that, despite her mother's death, MCL 700.1308 authorized the probate court to compel the coconservators to pay money, restore property, or other means to redress a breach of duty. MCL 700.1308 provides:

> (1) A violation by a fiduciary of a duty the fiduciary owes to an heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary is a breach of duty. To remedy a breach of duty that has occurred or may occur, the court may do any of the following:
>
> (a) Compel the fiduciary to perform the fiduciary's duties.
>
> (b) Enjoin the fiduciary from committing a breach of duty.
>
> (c) Compel the fiduciary to redress a breach of duty by paying money, restoring property, or other means.
>
> (d) Order a fiduciary to account.
>
> (e) Appoint a special fiduciary to take possession of the estate's, ward's, protected individual's, or trust property and administer the property.
>
> (f) Suspend the fiduciary.
>
> (g) Remove the fiduciary as provided in this act.
>
> (h) For a fiduciary otherwise entitled to compensation, reduce or deny compensation to the fiduciary.

(i) Subject to other provisions of this act protecting persons dealing with a fiduciary, void an act of the fiduciary, impose a lien or a constructive trust on property, or trace property wrongfully disposed of and recover the property or its proceeds.

(2) In response to an interested person's petition or on its own motion, the court may at any time order a fiduciary of an estate under its jurisdiction to file an accounting. After due hearing on the accounting, the court shall enter an order that agrees with the law and the facts of the case.

"A conservator is personally liable for an obligation arising from ownership or control of estate property or for torts committed in the course of estate administration only if personally at fault." MCL 700.5430(2). "A question of liability between the estate and the conservator personally may be determined in a proceeding for accounting, surcharge, indemnification, or other appropriate proceeding or action." MCL 700.5430(4). A probate court may make a finding on a conservator's breach of fiduciary duties even after the death of the protected person. *In re Conservatorship of Murray*, 336 Mich App at 259-260.

In this case, Marian did not petition to remove the coconservators or petition to surcharge the coconservators for assets that were allegedly improperly disposed of. And her written objections did not include any allegations that the coconservators neglected Mary's health while she was alive.[13] But to the extent that she alleged that income or assets were not accounted for or income or assets were improperly disposed of, we find that the probate court erroneously held that it did not have the authority to address the issues and erroneously instructed Marian to raise the issues in Mary's estate proceedings. See MCL 700.5430(4); see also *In re Conservatorship of Murray*, 336 Mich App at 259-260. Nevertheless, we find that the probate court did not abuse its discretion in allowing the final account absent any evidence that income or assets were not accounted for or improperly disposed of.

First, Marian objected to the coconservators' failure to list each Social Security check received. The probate court overruled this objection because the coconservators filed a spreadsheet that listed the value of each check separately. Because Marian "fails to dispute the [actual] basis of the [probate] court's ruling, this Court need not even consider" her appellate challenge. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004) (cleaned up). In any event, we find no error in the court's factual findings and thus affirm its holding on this objection.

Next, Marian objected to the deposit of Mary's lump sum Social Security payment into Brenda's personal checking account after Mary's death. The probate court acknowledged that there was a "technical commingling," but overruled the objection because it found that all the funds were accounted for and thus the accounting was accurate. Again, Marian does not contest the basis of the court's ruling and thus we do not need to consider her appellate challenge.

---

[13] We decline to review this unpreserved issue on appeal. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020).

*Derderian*, 263 Mich App at 381. Nevertheless, we find no error in the court's factual findings and thus affirm its holding on this objection.

Marian also objected to the coconservators' failure to include the homestead and home heating credits that Mary was allegedly entitled to. The probate court overruled this objection because the coconservators asserted that Mary was not entitled to the credits during their tenure as coconservators and thus they did not apply for it. Marian conceded to the probate court that she had no proof to refute the coconservators' argument.[14] Because Marian does not challenge the basis of the court's ruling, we do not need to consider her appellate challenge. *Derderian*, 263 Mich App at 381. Nonetheless, we find no error in the court's factual findings and thus affirm its holding on this objection.

Marian further objected to the $5,784 payment to Carney because it was more than the income Mary received and the coconservators failed to specify the services Carney rendered to Mary during her tenure as conservator in the expense column. This objection was also overruled. The probate court found that its order allowing Carney's final accounting approved $3,801.72, which represented the full satisfaction of the fee amount. And the $1,900 difference represented repayment to Carney for home healthcare invoices that she paid directly that were also approved in its order allowing Carney's final accounting. Marian did not appeal that prior order and she does not contest the court's factual findings on appeal. Accordingly, we do not need to consider her appellate challenge. *Derderian*, 263 Mich App at 381. Notwithstanding, we find no error in the court's factual findings and thus affirm its holding on this objection.

At the hearing, Marian withdrew her objections to the value of the Oak Park property and the lien. And she does not take issue with either of those matters on appeal. Accordingly, we will not address those objections.

Next, Marian objected to the coconservators' failure to include various expenses, including: real estate taxes, water and sewer expenses, electricity expenses, gas expenses, life insurance premiums, homeowner's insurance premiums, grocery expenses, medical and dental expenses, and use of Veterans Administration's disbursements. The probate court overruled Marian's objections because the coconservators stated they paid all of Mary's expenses with their personal income and none of the expenses were paid with Mary's funds. Marian did not present any evidence to the probate court to rebut the coconservators' arguments. And because she does not contest the basis of the court's ruling, we do not need to consider her appellate challenge. *Derderian*, 263 Mich App at 381. In any event, we find no error in the court's factual findings and thus affirm its holding on these objections.

Marian also objected to the coconservators' failure to include a certificate of deposit in the list of assets. The coconservators maintained that, to the best of their knowledge, the certificate of deposit was liquidated prior to their qualification as coconservators as reflected in the inventory and accounts filed by Carney. The certificate of deposit was identified as an assert on Carney's September 2016 amended inventory. But Carney's first and final account as special conservator

---

[14] We note that the court instructed Marian that she could file a petition to surcharge the coconservators if she had proof that Mary was entitled to the credits.

reported that the certificate of deposit was liquidated. Carney did not identify the certificate of deposit as an asset on the first account as the successor conservator, the amended second account, or the amended third and final account. The probate court allowed all three accounts. And Marian did not appeal the probate court's orders. "Appointment of a conservator vests in the conservator title as trustee to all of the protected individual's property, or to the part of that property specified in the order, held *at the time of* or acquired after the order[.]" MCL 700.5419(1) (emphasis added). Because Marian did not present any evidence to the probate court to rebut the coconservators' argument that the certificate of deposit was not held by Mary at the time of their appointment, the probate court overruled her objection. Once again, Marian does not challenge the basis of the court's ruling, so we do not need to consider her appellate challenge. *Derderian*, 263 Mich App at 381. Nevertheless, we find no error in the court's factual findings. Accordingly, we affirm the holding on this objection.

Marian further objected to the coconservators' failure to include three life insurance policies in the list of assets. The coconservators maintained that, to the best of their knowledge, the life insurance policies lapsed prior to their qualification as coconservators. Carney did not identify the life insurance policies as assets on the first account, the amended second account, or the amended third and final account. The probate court allowed all three accounts. And Marian did not appeal the probate court's orders. Because Marian did not present any evidence to the probate court to rebut the coconservators' argument that the life insurance policies were not part of Mary's property at the time of their appointment, the probate court overruled her objection. Marian does not dispute the basis of the court's ruling and thus we do not need to consider her appellate challenge. *Derderian*, 263 Mich App at 381. But we find no error in the court's factual findings and thus affirm the holding on this objection.

Next, Marian objected to the coconservators' failure to include the mink coat in the list of assets. The coconservators each testified under oath that, to the best of their knowledge, the mink coat was in the Oak Park home. Coconservators' counsel conceded that the coat was inadvertently left off the first and final account, but maintained that they were relying on Carney's amended third and final account that did not identify the coat as an asset.[15] Because Marian did not present any evidence to the probate court to rebut the coconservators' testimony that the mink coat was not transferred or disposed of, the probate court overruled her objection. Finding no error in the court's factual findings, we affirm the holding on this objection.

Marian also objected to the coconservators' failure to include a vacuum cleaner, two rings, and a pearl and diamond enhancer in the list of assets. The coconservators each testified under oath that, to the best of their knowledge, the items were in the Oak Park home. Carney did not identify any of these items as assets on the amended second account or the amended third and final account. Both accounts were allowed by the probate court. And Marian did not appeal the probate

---

[15] Marian claims in her brief on appeal that the coconservators' counsel stated that the fur coat was given to Dorothy pursuant to Mary's will. This is a misstatement of the record. While counsel discussed the terms of the will, counsel clearly stated, "we don't deny that it exists[;] it is in the Oak Park home." And the probate court specifically declined to address whether Dorothy was entitled to the coat pursuant the terms of the will.

court's orders. We also note that Marian did not identify any of these items in the inventories that she filed in 2014, nor are they listed on the first annual account that she filed in 2015. Because Marian did not present any evidence to the probate court to rebut the coconservators' testimony that none of these items were transferred or disposed of, the probate court overruled her objection. We find no error in the court's factual findings. Accordingly, we affirm the holding on these objections.

We further conclude that the probate court did not abuse its discretion in electing not to penalize the coconservators for breaching their reporting duties by filing the first and final account more than 56 days after Mary's death.[16] MCR 5.230(D) provides in part: "If the fiduciary fails to perform the duties required within the time allowed, the court *may* do any of the following: suspend the powers of the dilatory fiduciary, appoint a special fiduciary, and close the estate administration." (emphasis added). The use of the term "may" indicates that the consequences for violating the reporting duties is at the court's discretion. See *In re Estate of Weber*, 257 Mich App 558, 562; 669 NW2d 288 (2003) ("the term 'may' presupposes discretion and does not mandate an action."). Although the coconservators filed the first and final account late, it was accepted and contained sufficient itemized attachments of receipts and disbursements. Thereafter, the estate was closed and the coconservators were relieved of their duties. Under the circumstances, the court's decision to not suspend coconservators or appoint a special fiduciary did not fall outside the range of principled outcomes.

Our holding does not bar Marian from petitioning the probate court to impose a surcharge on the coconservators for funds and/or property that are missing from Mary's estate due to a breach of fiduciary duty established by a preponderance of the evidence. See MCL 700.5430(4); see also *In re Conservatorship of Murray*, 336 Mich App at 246, 259-260.

Affirmed.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Noah P. Hood

---

[16] Marian's argument that the coconservators' inventory was filed late is without merit. The letters of authority specified that the inventory was due on March 27, 2019. The coconservators filed their inventory on March 26, 2019.