VYLETEL-RIVARD v RIVARD

Docket No. 285210. Submitted September 2, 2009, at Detroit. Decided October 15, 2009, at 9:05 a.m.

Carole L. Vyletel-Rivard brought an action against Gregory T. Rivard in the Wayne Circuit Court, Family Division, seeking a divorce. The parties entered into an arbitration agreement pursuant to the domestic relations arbitration act, MCL 600.5070 *et seq.*, to submit the issues of property and debt division, child support, parenting time, spousal support, costs and fees, and "[o]ther contested domestic relations matters" to arbitration. Plaintiff requested, in part, an award of permanent or long-term spousal support, and asked for an award of alimony in gross to compensate her for contracting the human papillomavirus (HPV) from defendant. The arbitrator issued his award on November 13, 2007, which included, in part, an award of $210,000 alimony in gross for plaintiff's "personal injury claim" of contracting HPV. On November 22, 2007, plaintiff filed a request for clarifications. On November 27, 2007, defendant filed a motion to correct errors or omissions. The arbitrator responded by letter on December 7, 2007, clarifying certain portions of the award, acknowledging certain errors, and revising the award. The arbitrator also rejected defendant's claim that the arbitrator exceeded his authority by awarding the $210,000 to plaintiff for her contraction of HPV. On December 18, 2007, defendant filed a motion to correct errors or omissions in the December 7, 2007, award. Following further correspondence between the parties and the arbitrator, the arbitrator issued his last dispositive ruling regarding two issues that had arisen on March 24, 2008. On March 28, 2008, defendant filed a motion to vacate the part of the arbitration awards of November 13, 2007, and December 7, 2007, concerning the award of $210,000 for plaintiff contracting HPV. The court, Muriel D. Hughes, J., denied the motion to vacate because it concluded that the motion was not timely filed, and the court entered a judgment of divorce. Defendant appealed from the denial of his motion to vacate the arbitration award.

The Court of Appeals *held*:

1. At the time the arbitrator issued his November 13, 2007, award and December 7, 2007, revised award defendant was required under MCR 3.602(J)(2) to file his motion to vacate within

21 days after the award was delivered. The date that the 21-day period begins is ambiguous to the extent that MCL 600.5078, by allowing a party, upon receiving a written award, to file a motion to correct errors or omissions, contemplates that the written award may be modified. Therefore, the date the 21-day period begins is dependent on whether a motion to correct errors or omissions is filed. If a motion to correct errors or omissions is not filed, the 21-day period begins on the date that the initial written award is delivered. If a motion to correct errors or omissions is filed, the 21-day period begins on the date that the arbitrator's decision on the motion is delivered. Therefore, defendant was required to file his motion to vacate within 21 days of the delivery of a copy of the arbitrator's December 7, 2007, decision. The defendant did not file his motion to vacate within that 21-day period. The order denying the motion to vacate must be affirmed.

2. MCL 600.5078(3) allows a party to file a motion to correct errors or omissions within 14 days after the award is issued. The "award" clearly refers to the initial written award referenced in MCL 600.5078(1). Therefore, the only motions to correct errors or omissions that are authorized by MCL 600.5078(3) are the ones filed within 14 days after the initial written award is issued. Defendant's second motion to correct errors or omissions was filed more than 14 days after the arbitrator issued the initial written award on November 13, 2007. Therefore, defendant did not have any legal authority to file the second motion.

Affirmed.

1. ARBITRATION — DOMESTIC RELATIONS ARBITRATION AWARDS — VACATION OF AWARDS — TIME LIMITATION.

The date that the 21-day period within which to file a motion to vacate a domestic relations arbitration award begins is dependent on whether a party files a motion to correct errors or omissions in the award; the 21-day period begins on the date that the initial written award is delivered if a motion to correct errors or omissions is not filed; the 21-day period begins on the date that the arbitrator's decision on a motion to correct errors or omissions is delivered if a motion to correct errors or omissions is filed (MCL 600.5078; MCR 3.602[J][2][2007]).

2. ARBITRATION — DOMESTIC RELATIONS ARBITRATION AWARDS — MOTIONS TO CORRECT ERRORS AND OMISSIONS.

A motion to correct errors or omissions in a domestic relations arbitration award must be filed within 14 days after the initial written award is issued (MCL 600.5078[1] and [3]).

*Tucker Tobin, PC* (by *Margaret M. Tobin*), for plaintiff.

*Ihrie O'Brien* (by *Deborah F. O'Brien* and *Dawn M. Prokopec*) for defendant.

Before: SAWYER, P.J., and CAVANAGH and HOEKSTRA, JJ.

PER CURIAM. Defendant appeals as of right with regard to a judgment of divorce. Specifically, defendant challenges the trial court's April 4, 2008, order denying his motion to vacate the arbitration award as to tort damages. Because we conclude that defendant's motion to vacate was not timely filed, we affirm.

### I. RELEVANT FACTS AND PROCEDURAL HISTORY

The parties, married in 1988 and the parents of two minor children, separated in November 2005. Plaintiff filed a complaint for divorce the following month. Pursuant to the domestic relations arbitration act (DRAA), MCL 600.5070 *et seq.*, the parties entered into a domestic relations arbitration agreement, whereby they submitted the issues of property and debt division, child support, parenting time, spousal support, costs and fees, and "[o]ther contested domestic relations matters" to arbitration. Plaintiff claimed that defendant, by drinking excessively, engaging in numerous affairs, and infecting her with the human papillomavirus (HPV), caused the breakdown of the marriage. In addition to requesting an award of permanent or long-term spousal support, plaintiff asked for an award of alimony in gross for her contraction of HPV.

The arbitrator issued his award on November 13, 2007. Pertinent to the present appeal, plaintiff was awarded spousal support in the amount of $3,200 a

month for seven years. She was also awarded $210,000 as alimony in gross for her "personal injury claim" of contracting HPV. Defendant was to pay the $210,000 in monthly installments of $2,500 over seven years.

On November 22, 2007, plaintiff filed a request for clarifications. Likewise, on November 27, 2007, defendant filed a motion to correct errors or omissions. Defendant argued, in part, that the arbitrator exceeded the scope of his authority when he awarded plaintiff $210,000 for her tort claim because, although the parties had agreed to allow the arbitrator to decide "[o]ther contested domestic relations matters," plaintiff had not pleaded a tort claim nor had she requested personal injury damages in her complaint. On December 7, 2007, the arbitrator responded by letter to plaintiff's clarification requests and defendant's motion to correct errors or omissions. The arbitrator clarified portions of the arbitration award, acknowledged certain errors, and revised the award.[1] The arbitrator also rejected defendant's claim that he exceeded his authority by awarding $210,000 to plaintiff for her contraction of HPV, finding that defendant had notice of plaintiff's personal injury claim and that the parties tried the claim without objection.

On December 18, 2007, defendant filed a motion to correct errors or omissions in the award dated December 7, 2007. Defendant complained that the arbitrator, in finding that he had notice of plaintiff's personal injury claim, ignored significant aspects of the case's

---

[1] For example, according to the arbitration award issued November 13, 2007, defendant was to pay plaintiff one-half of the value of his interest in Detroit Name Plate Etching (DNPE) in four yearly installments, the first payment due on December 31, 2007, and the balance would earn interest at the rate of two points above prime. In the December 7, 2007, letter, the arbitrator conceded that an interest rate two points above prime could be usurious, and he capped the interest rate at seven percent.

history, such as the fact that plaintiff, during her testimony, acknowledged that she chose not to pursue a tort action against defendant and the fact that plaintiff did not make a specific request for tort damages until after the close of proofs. In her response, plaintiff claimed that, pursuant to the DRAA, defendant did not have any authority to file his second motion to correct errors or omissions.

Written correspondence continued between the parties and the arbitrator until the end of March 2008. From a review of the correspondence, it does not appear that the arbitrator addressed defendant's argument that he had ignored significant aspects of the case when he found that defendant had notice of plaintiff's personal injury claim. Nor does it appear that the arbitrator ever directly addressed plaintiff's claim that defendant did not have any authority to file his second motion to correct errors or omissions. Two other issues had become the focus of the parties and the arbitrator. The first issue, raised in defendant's second motion to correct errors or omissions, was whether defendant's interest in Detroit Name Plate Etching (DNPE) should be reduced by $80,000, the amount defendant borrowed to cover the deficiency that resulted from the sale of the marital home.[2] The second issue was whether defendant could be required to purchase life insurance to secure his spousal and child support obligations.[3] The arbitrator issued his last dispositive rul-

---

[2] In the arbitration award, plaintiff received 50 percent of defendant's interest in DNPE, and the parties had stipulated that any deficiency from the sale of the marital home would be paid by defendant and "adjusted by way of a subtraction from [plaintiff's] share of the division of [DNPE]."

[3] In the arbitration award, defendant was ordered to maintain the parties' children and plaintiff as beneficiaries of a life insurance policy in the declining balances of child and spousal support owed. In his November 27, 2007, motion to correct errors or omissions, defendant claimed that he could not be compelled to purchase life insurance to secure his

ing on these two issues on March 24, 2008, when he ordered plaintiff to revise the proposed judgment of divorce that she had filed in the trial court and had moved the trial court to enter. Three days later, on March 27, 2008, plaintiff submitted to defendant a revised proposed judgment of divorce.

On March 28, 2008, defendant, pursuant to MCL 600.5081(2)(c), filed a motion to vacate "the arbitration awards" of November 13, 2007, and December 7, 2007, as to tort damages. Defendant argued that the arbitrator exceeded his powers when he awarded plaintiff $210,000 for her contraction of HPV because the parties' arbitration agreement did not authorize the arbitrator to decide a personal injury claim, nor could the personal injury claim be categorized as a "contested domestic relations matter []" because the claim was not pleaded in the complaint. In response, plaintiff argued that defendant's motion to vacate should be denied as untimely because, contrary to the applicable court rule, it was not filed within 21 days of the December 7, 2007, award. In the alternative, plaintiff argued that defendant consented to the arbitration of her personal injury claim when he presented evidence regarding the contraction of HPV and asserted the defenses of "contribution [sic] negligence, and causation." Plaintiff claimed that because defendant expressly consented to the arbitration of the claim, defendant could not argue that plaintiff failed to adequately plead the claim or that the arbitrator exceeded his authority in deciding

support obligations. The arbitrator, in his December 7, 2007, letter, affirmed the directive that defendant secure his support obligations with a life insurance policy. Defendant did not raise the issue in his December 18, 2007, motion to correct errors or omissions. On January 8, 2008, plaintiff submitted a memorandum of law regarding the arbitrator's authority to order security for support obligations. It is unclear from the record why plaintiff submitted the memorandum.

the claim. Defendant asserted that his motion to vacate was timely because it was filed within 21 days of the arbitrator's final modification of the arbitration award. He argued that an arbitration award is not final until the arbitrator has addressed all issues, and there is no authority to suggest that a party to arbitration is required to file piecemeal motions to vacate.

The trial court denied defendant's motion to vacate because it concluded that the motion was not timely filed. It stated that the applicable court rule, MCR 3.602(J), provides that a motion to vacate must be filed within 21 days after the date of the arbitration award, and because the court rule did not refer to the "final award," it reasoned that for purposes of MCR 3.602(J), the date of the arbitration award was December 7, 2007. The trial court also addressed the substantive merits of the motion to vacate. It concluded that defendant impliedly consented to the arbitration of the personal injury claim because the claim was tried and briefed at arbitration and defendant made no objection until after the award was issued. A judgment of divorce was entered.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred when it concluded that his motion to vacate was not timely filed. Defendant also asserts that, because plaintiff did not plead a tort claim in the complaint and because he did not impliedly consent to the arbitration of a tort claim, the arbitrator exceeded his authority when he awarded plaintiff $210,000 for her contraction of HPV.

### A. STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion to vacate or modify an arbitration award. *Washington v*

*Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). We also review de novo the interpretation of court rules and statutes. *Tinman v Blue Cross & Blue Shield of Michigan*, 264 Mich App 546, 555; 692 NW2d 58 (2004).

### B. MOTION TO VACATE

We first address defendant's argument that the trial court erred by concluding that his motion to vacate was not timely filed. Defendant moved to vacate the arbitration award pursuant to MCL 600.5081(2)(c). MCL 600.5081(2) provides:

> If a party applies under this section, the court shall vacate an award under any of the following circumstances:
>
> (a) The award was procured by corruption, fraud, or other undue means.
>
> (b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.
>
> (c) The arbitrator exceeded his or her powers.
>
> (d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

MCL 600.5081 does not contain a time requirement for when a motion to vacate on the basis that the arbitrator exceeded his or her powers must be filed.[4]

MCR 3.602(J)(3) currently provides that "[a] motion to vacate an [arbitration] award must be filed within 91 days after the date of the award. . . . A motion to vacate

---

[4] The statute does contain a time requirement for when a motion to vacate on the basis of corruption, fraud, or undue means must be filed. Pursuant to MCL 600.5081(4), such a motion must be made within 21 days after the grounds are known or should have been known.

an award in a domestic relations case must be filed within 21 days after the date of the award." The current subsection (J)(3) was added to MCR 3.602 in October 2007, effective January 1, 2008. See 480 Mich cxlv-cxlvi (2007). Before the October 2007 amendment, MCR 3.602(J)(2) provided that "[a]n application to vacate an award must be made within 21 days after delivery of a copy of the award to the applicant . . . ." There was no reference in MCR 3.602 to domestic relations arbitration cases, and the court rule expressly applied to "statutory arbitration under MCL 600.5001-600.5035," MCR 3.602(A). Nonetheless, in *Valentine v Valentine*, 277 Mich App 37, 39 n 1; 742 NW2d 627 (2007), this Court held that because of the directive of MCL 600.5081(6), that "[o]ther standards and procedures relating to review of arbitration awards described in subsection (1) are governed by court rule," MCR 3.602 applies to domestic relations arbitration cases. Consequently, on appeal, defendant does not dispute that, for his motion to vacate to have been timely, it must have been filed within 21 days after delivery of the award.

Defendant claims that his motion to vacate was timely filed because it was filed within 21 days after the arbitrator, on March 24, 2008, issued his final ruling on the issues raised by the parties. He contends that the term "award" as used in MCR 3.602(J)(2) refers to the "final" arbitration award. Plaintiff argues that because MCR 3.602(J)(2) contains no language modifying the term "award," the term refers to the initial award issued by the arbitrator.

The rules governing statutory construction apply to the interpretation of court rules. *Reed v Breton*, 279 Mich App 239, 242; 756 NW2d 89 (2008). Court rules are to be interpreted to give effect to the intent of the Supreme Court, the drafter of the rules. *Fleet Business*

*Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 591; 735 NW2d 644 (2007). The starting point is the language of the court rule. *Wilcoxon v Wayne Co Neighborhood Legal Services*, 252 Mich App 549, 553; 652 NW2d 851 (2002). If the language of the rule is clear and unambiguous, then no further judicial interpretation is required or allowed. *Id.* Only when the language is ambiguous is judicial construction appropriate. *Id.* "[A] provision of the law is ambiguous only if it 'irreconcilably conflict[s]' with another provision or when it is *equally* susceptible to more than a single meaning." *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (citation omitted; emphasis in original). If judicial construction is required, this Court must adopt a construction that best accomplishes the purpose of the court rule. See *Adams Outdoor Advertising, Inc v Canton Charter Twp*, 269 Mich App 365, 371; 711 NW2d 391 (2006). While the Court may consider a variety of factors, it should always use common sense. *Id.*

MCR 3.602(J)(2), on its face, appears to state an unambiguous time requirement: a motion to vacate an arbitration award must be filed within 21 days after delivery of a copy of the award to the party. However, the date the 21-day period begins is ambiguous, to the extent that MCR 3.602(J)(2) applies to the DRAA, when MCL 600.5078 is considered.[5] In relevant part, MCL 600.5078 provides:

> (1) Unless otherwise agreed by the parties and arbitrator in writing or on the record, the arbitrator shall issue the written award on each issue within 60 days after either the end of the hearing or, if requested by the arbitrator, after receipt of proposed findings of fact and conclusions of law.

[5] A provision similar to MCL 600.5078(3) is not contained in the provisions of statutory arbitration.

* * *

> (3) An arbitrator under this chapter retains jurisdiction to correct errors or omissions in an award until the court confirms the award. Within 14 days after the award is issued, a party to the arbitration may file a motion to correct errors or omissions. The other party to the arbitration may respond to such a motion within 14 days after the motion is filed. The arbitrator shall issue a decision on the motion within 14 days after receipt of a response to the motion or, if a response is not filed, within 14 days after expiration of the response period.

By allowing a party, upon receiving the written award, to file a motion to correct errors or omissions, the statute clearly contemplates that the written award issued by the arbitrator may be modified. Thus, MCL 600.5078 implicitly contemplates two awards: (1) the initial written award, and (2) the initial award as modified by any decision on a motion to correct errors or omissions. The term "award" in MCR 3.602(J)(2) could refer, with equal susceptibility, to either of the two awards contemplated by MCL 600.5078. Consequently, it is ambiguous whether the 21-day period of MCR 3.602(J)(2) begins when the initial written award is delivered to the party or when the decision on the motion to correct errors or omissions is delivered.

Guided by the fact that the Legislature has authorized a party to a domestic relations arbitration to file a motion to correct errors or omissions, we hold that the date the 21-day period of MCR 3.602(J)(2) begins is dependent on whether a motion to correct errors or omissions is filed. If a motion to correct errors or omissions is not filed, then the 21-day period begins on the date the initial written award is delivered. However, if a motion to correct errors or omissions is filed, then the 21-day period begins on the date the arbitrator's decision on the motion is delivered. This construction of

MCR 3.602(J)(2) recognizes that the initial written arbitration award may be modified, and it does not require a party to move to vacate the arbitration award until such modifications are, in fact, made or denied.

In this case, after the arbitrator issued the initial written arbitration award on November 13, 2007, plaintiff filed a request for clarifications and defendant filed a motion to correct errors or omissions. The arbitrator issued his decision on the clarification requests and the motion to correct errors or omissions on December 7, 2007. Thus, pursuant to MCR 3.602(J)(2) and our above holding, defendant was required to file his motion to vacate within 21 days of delivery of a copy of the December 7, 2007, decision.

Defendant did not move to vacate the arbitration award within 21 days after delivery of a copy of the December 7, 2007, decision. Rather, defendant chose to file a second motion to correct errors or omissions; this motion requested the correction of errors or omissions in the December 7, 2007, decision. However, reviewing the language of MCL 600.5078(3), we conclude that defendant did not have any legal authority to file the second motion to correct errors or omissions. According to MCL 600.5078(3), a party may file a motion to correct errors or omissions "[w]ithin 14 days after *the award* is issued" (emphasis added). "[T]he award" clearly refers to the initial written award referenced in MCL 600.5078(1). Thus, the only motions to correct errors or omissions that are authorized by MCL 600.5078(3) are the ones filed within 14 days after the initial written award is issued. Defendant's second motion to correct errors or omissions was filed December 18, 2007, more than 14 days after the arbitrator issued the initial written award on November 13, 2007, and, therefore, it was filed outside the period permitted by statute.

As already stated, defendant did not file a motion to vacate within the 21-day period permitted by MCR 3.602(J)(2). The motion to vacate was not filed until March 28, 2008, more than 3½ months after the arbitrator issued the December 7, 2007, decision. On appeal, defendant makes no argument that an untimely filing of a motion to vacate should not result in the denial of the motion. Indeed, MCR 3.602(J)(2) states that a motion "to vacate an award *must* be made within 21 days after delivery . . . ." (Emphasis added.) The term "must" indicates that something is mandatory. *Old Kent Bank v Kal Kustom Enterprises*, 255 Mich App 524, 532-533; 660 NW2d 384 (2003); *Great Lakes Gas Transmission Ltd Partnership v Markel*, 226 Mich App 127, 130; 573 NW2d 61 (1997). Accordingly, because defendant's motion to vacate was not timely filed, we affirm the trial court's order denying the motion to vacate.[6]

Affirmed.

[6] Because of our conclusion that defendant's motion to vacate was not timely filed, we need not address defendant's argument that the arbitrator exceeded his authority when he awarded plaintiff $210,000 for her contraction of HPV.