# STATE OF MICHIGAN

# COURT OF APPEALS

AMBER DUDLEY, Personal Representative of the
ESTATE OF JAMES DUDLEY,

      Plaintiff-Appellant,

v

ST. CLAIR COUNTY OFFICE OF DRAIN
COMMISSIONER, COUNTY OF ST. CLAIR,
TIMOTHY R. CHARRON, ROBERT WILEY,
CHARLES WOOD, and EDWARD H. FAHLEY
as Trustee of EDWARD H. FAHLEY TRUST,

      Defendants-Appellees.

UNPUBLISHED
March 5, 2015

No. 317202
St. Clair Circuit Court
LC No. 12-001027-NO

Before: CAVANAGH, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Plaintiff, Amber Dudley, as the personal representative of the Estate of James Dudley, appeals as of right the order granting summary disposition in favor of defendant Edward H. Fahley, as trustee of the Edward H. Fahley Trust, in this wrongful death action. Plaintiff also contests the trial court's earlier decision, granting summary disposition in favor of defendants, Office of St. Clair County Drain Commissioner (the Commissioner), County of St. Clair (the County), Timothy R. Charron, Robert Wiley[1], and Charles Wood (hereinafter jointly referred to as "County defendants"). We affirm.

This action arises from the death of James Dudley (the decedent), a jail inmate, while working as a volunteer for the Commissioner in the clearing of trees and other vegetation growing in the storm water drain known as the Emmet Drain. On the morning of August 28, 2010, the decedent and another inmate-volunteer were working to cut down a tree in the drain under the supervision of Charron, an employee of the Commissioner's office. The decedent and his co-worker successfully felled the tree they were working on. However, while securing the

---

[1] At the time of the events complained of by plaintiff, Wiley was serving in the capacity of St. Clair County Drain Commissioner.

area, another tree—that was located 10 to 15 feet away and was not part of the removal work being performed—fell and struck the decedent with significant force. He died from his injuries.

Plaintiff first contends that the trial court erred in prematurely scheduling and hearing the County defendants' motion for summary disposition before the completion of discovery and in the disregard of its own scheduling order precluding the scheduling of dispositive motions before the close of discovery. For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). Plaintiff raised a challenge to the standard of review and the scheduling of the County defendants' motion for summary disposition in her motion for reconsideration. This aspect of the issue is not properly preserved for appellate review. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009) (citation omitted) ("Where an issue is first presented in a motion for reconsideration, it is not properly preserved.").

This Court reviews de novo the grant or denial of a motion for summary disposition. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). Questions of law are also reviewed de novo. *Id.* Discussing motions for summary disposition filed pursuant to MCR 2.116, this Court explained:

> Subrule (C)(7) permits summary disposition where the claim is barred by an applicable statute of limitations. In reviewing a motion under subrule (C)(7), a court accepts as true the plaintiff's well-pleaded allegations of fact, construing them in the plaintiff's favor. The Court must consider affidavits, pleadings, depositions, admissions, and any other documentary evidence submitted by the parties, to determine whether a genuine issue of material fact exists. These materials are considered only to the extent that they are admissible in evidence.

> A motion for summary disposition under subrule (C)(8) tests the legal sufficiency of the pleadings alone. Where the parties rely on documentary evidence, appellate courts proceed under the standards of review applicable to a motion made under MCR 2.116(C)(10), or (C)(7).

> A motion made under MCR 2.116(C)(10) tests the factual support for a claim, and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rest upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. But again, such evidence is only considered to the extent that it is admissible. A genuine issue of material fact exists when the record, drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue upon which reasonable minds could differ. [*Id.* at 61-62 (citations omitted).]

This Court also reviews de novo the interpretation of court rules. *Vyletel-Rivard v Rivard*, 286 Mich App 13, 20; 777 NW2d 722 (2009). Unpreserved claims are reviewed for plain error. *Kloian v Schwartz*, 272 Mich App 232, 242; 725 NW2d 671 (2006). "[T]his Court may overlook

preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

The trial court issued a pretrial statement and scheduling order indicating that motions brought pursuant to MCR 2.116(C)(10) would not be heard until the completion of discovery. In turn, discovery was to be conducted and completed "prior to case evaluation," which was scheduled for November 16, 2012. The County defendants filed their motion for summary disposition on August 6, 2012, under MCR 2.116(C)(7), (8), and (10). A hearing on the motion was conducted on August 27, 2012.

Plaintiff mischaracterizes the trial court's pretrial statement and scheduling order and the rule under which the trial court granted summary disposition. In its pretrial statement, the trial court indicated that "[m]otions for summary disposition *based upon the alleged lack of any genuine issue of material fact, MCR 2.116(C)(10)*, will not be heard until after the completion of discovery." The County defendants indicated that their motion for summary disposition was brought pursuant to MCR 2.116(C)(7), (8), and (10), but primarily argued for dismissal premised on governmental immunity or (C)(7). The trial court held that the County defendants were entitled to governmental immunity and that no exception applied. Thus, the trial court's ruling was premised on an issue of law, not an issue of fact, and was in conformance with the pretrial statement issued. As discussed by this Court in *Willett v Charter Twp of Waterford*, 271 Mich App 38, 45; 718 NW2d 386 (2006 ) (citations omitted):

> "Governmental immunity is a question of law that is reviewed de novo," and decisions on summary disposition are also reviewed de novo. Under MCR 2.116(C)(7), "all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties." But such materials "shall only be considered to the extent that the[y] . . . would be admissible as evidence . . . ." "If no [material] facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law."

Contrary to plaintiff's contention, despite the existence of certain factual disputes in this matter, to survive a motion for summary disposition based on governmental immunity, a plaintiff is required to allege facts justifying the application of an exception to governmental immunity. *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). Even accepting plaintiff's allegations as true, any factual disputes did not rise to the level of precluding summary disposition because they did not establish the existence of an applicable exception to governmental immunity.

On appeal, plaintiff also takes issue with the scheduling of the County defendants' motion for hearing within 21 days. In support of her argument, plaintiff cites to MCR 2.116(B)(2). Plaintiff misconstrues this subrule as requiring all motions for summary disposition to be scheduled "at least 28 days" from the date of service, yet ignores the pertinent language

that the 28 day period is applicable only "on a motion brought by a party asserting a claim," MCR 2.116(B)(2), which does not encompass the County defendants. "MCR 2.116(B)(2) does not apply to defendants who wish to move for summary disposition; it governs plaintiffs who wish to move for immediate summary disposition upon the filing of a complaint, hence the words 'a party asserting a claim' in MCR 2.116(B)(2)." *Smith v Sinai Hosp of Detroit*, 152 Mich App 716, 723; 394 NW2d 82 (1986).

Instead, as recognized in MCR 2.116(G)(1)(a)(i), a motion for summary disposition brought by the County defendants was timely, having been filed within 21 days of the hearing. MCR 2.107(C) provides: "Service of a copy of a paper on an attorney must be made by delivery or by mailing to the attorney at his or her last known business address." Service effectuated by mailing is defined by MCR 2.107(C)(3) as being "complete at the time of mailing." Plaintiff does not dispute the County defendants' assertion that a copy of the motion for summary disposition was mailed to plaintiff 21 days before the date set for hearing. As such, plaintiff's contention of the improper or untimely filing of the County defendants' motion for summary disposition is without merit.

Finally, plaintiff implies error because the trial court did not incorporate into its opinion any of the documented evidence submitted by her. But the trial court demonstrated a clear understanding of the respective positions and arguments of the parties, both factually and legally, in its opinion. In addition, MCR 2.517 does not require a trial court to delineate each and every piece of evidence or testimony before it. Specifically, MCR 2.517(2) indicates, "[b]rief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without overelaboration of detail or particularization of facts." Plaintiff wrongfully assumes that the failure to cite each piece of evidence presented equates to a failure to consider the evidence.

Next, plaintiff argues that the sewage disposal event exception to governmental immunity was applicable; thus, the County defendants were not entitled to summary disposition. This Court reviews the applicability of governmental immunity de novo. *Herman v City of Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004).

The Government Tort Liability Act (GTLA) permits "broad immunity from tort liability to governmental agencies whenever they are engaged in the exercise or discharge of a governmental function[.]" MCL 691.1401 et seq.; *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984), superseded by statute on other grounds as stated in *Peters v Bay Fresh Start, Inc*, 161 Mich App 491, 498; 411 NW2d 463 (1987). The scope of governmental immunity is construed broadly, with this Court narrowly construing any applicable exceptions. *Fane*, 465 Mich at 74. When interpreting a statute, this Court's goal is to give effect to the intent of the Legislature. *US Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009).

As discussed by this Court in *Linton v Arenac Co Road Comm*, 273 Mich App 107, 113-114; 729 NW2d 883 (2006), citing MCL 691.1417:

> "A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system" unless the claimant can show that several statutory requirements have been met under MCL 691.1416 through MCL

691.1419, which "provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory." Thus, to avoid governmental immunity, the claimant must show:

(1) that the claimant suffered property damage or physical injuries caused by a sewage disposal system event;

(2) that the governmental agency against which the claim is made is "an appropriate governmental agency," which is defined as "a governmental agency that, at the time of a sewage disposal system event, owned or operated, or directly or indirectly discharged into, the portion of the sewage disposal system that allegedly caused damage or physical injury";

(3) that "[t]he sewage disposal system had a defect";

(4) that "[t]he governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect";

(5) that "[t]he governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect";

(6) that "[t]he defect was a substantial proximate cause of the event and the property damage or physical injury";

(7) "reasonable proof of ownership and the value of [any] damaged personal property"; and

(8) that the claimant provided notice as set forth in MCL 691.1419. [Specific statutory and case law citations omitted.]

In turn, MCL 691.1416(k) defines a "sewage disposal event" as follows:

"Sewage disposal system event" or "event" means *the overflow or backup of a sewage disposal system onto real property.* An overflow or backup is not a sewage disposal system event if any of the following was a substantial proximate cause of the overflow or backup:

(*i*) An obstruction in a service lead that was not caused by a governmental agency.

(*ii*) A connection to the sewage disposal system on the affected property, including, but not limited to, a sump system, building drain, surface drain, gutter, or downspout.

(*iii*) An act of war, whether the war is declared or undeclared, or an act of terrorism. [Emphasis added.]

Based on the plain and unambiguous language of MCL 691.1416(k), plaintiff failed to demonstrate the occurrence of a "sewage disposal event." There was no evidence or allegation that the incident occurred during or following an "overflow or backup" of the drain onto the Fahley property or surrounding environs. Although trees and other unwanted vegetation were growing in the drain and could have, in the future, resulted in an overflow or backup at that location had the growth remained unchecked, there was no evidence that such a backup or overflow had occurred at the time of the incident that is the basis for plaintiff's complaint. Thus, the sewage disposal event exception was not applicable under the circumstances of this case.

Further, plaintiff's assertion of the applicability of the sewage disposal event exception to governmental immunity is strained, at best. Plaintiff appears to suggest that the presence of the trees and other vegetation constituted defects in the system. A "defect" is defined by MCL 691.1416(e) as "a construction, design, maintenance, operation, or repair defect." As discussed by this Court in *Willett*, 271 Mich App at 52 (citations omitted):

> The statute does not further define the terms used to define "defect." Given that the definition of "defect" itself uses the term "defect," and that the second use of the term is undefined in the statute, we reference dictionary definitions. A "defect" is defined as "a fault or shortcoming; imperfection." "Maintenance" is defined as "the act of maintaining," and "maintain" is defined as: "1. to keep in existence or continuance; preserve. 2. to keep in due condition, operation, or force. 3. to keep in a specified state, position, etc."

Plaintiff did not allege that the County defendants created the purported "defect." Even if the obstruction of the drain by the vegetation were to be construed as a "defect" for purposes of the statute, plaintiff has failed to demonstrate that it led to a "sewage disposal event" in this case, as that phrase is defined. In order to avail herself of the sewage disposal event exception, plaintiff had to satisfy all of the factors contained in MCL 691.1417(3), which requires the occurrence of "an event." *Willett*, 271 Mich App at 52. The statutory language of MCL 691.1416(k) precludes the availability of the exception based on the definition of a "sewage disposal event."

Plaintiff further asserts that an overflow occurred because the felled cottonwood tree was "full of water" and, thus, when it landed on the property, it constituted an "overflow." This suggestion is not only highly strained but inconsistent with the requirement that exceptions to governmental immunity are to be construed narrowly. *Fane*, 465 Mich at 74. The argument that the felling of a highly saturated tree results in an "overflow or backup" belies the plain and ordinary meaning attributed to those words and is contrary to the statutory language of MCL 691.1416(k) (emphasis added), which necessitates that an "overflow or backup" must be "*of a sewage disposal system* onto real property" and some form of appurtenance thereto, which does not comprise a part of the "system."

Next, plaintiff argues that the Commissioner was not entitled to governmental immunity because he was engaged in an ultra vires activity at the time of the accident. Specifically, plaintiff contends that the Commissioner was not authorized to conduct maintenance on the subject drain without having first procured the approval of the Drain Commission.

-6-

Plaintiff asserts that MCL 280.33(2) required the Commissioner to pay the decedent for his work and implies that the use of the decedent, as voluntary labor, is outside the acts permitted of the Commissioner without approval by the Drain Commission. MCL 280.33(2) provides:

> The drain commissioner *may*, with the approval of the county board of commissioners, hire drain maintenance employees. Such drain maintenance employees shall be considered county employees and shall be compensated from the general fund of a county in the same manner and at the same time as other county employees. [Emphasis added.]

When interpreting a statutory provision, courts are to enforce the plain and ordinary meaning of the language used in the statute. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007). It is to be presumed that the Legislature intended whatever meaning is plainly expressed. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 219; 731 NW2d 41 (2007). The statutory term "may" is permissive and therefore indicative of discretion. "[T]he term 'may' presupposes discretion and does not mandate an action." *In re Estate of Weber*, 257 Mich App 558, 562; 669 NW2d 288 (2003). Thus, contrary to plaintiff's assertion, the cited statutory provision does not mandate hiring by the Commissioner of all laborers assigned to work on drains or suggest that the use of inmate labor was outside the discretion and authority afforded to the Commissioner.

Plaintiff also asserts that MCL 280.191 requires the Commissioner to seek approval of the Drain Commission before initiating any work on a drain. The statutory provision cited by plaintiff limits "how repairs of a drain system may be initiated and how the cost of repairs is to be allocated." *Bosanic v Motz Dev, Inc*, 277 Mich App 277, 284-285; 745 NW2d 513 (2007). Specifically, in accordance with the Drain Code,

> the cost of any repair made to a drain system must necessarily be borne by persons who use the drain system. Thus, the statutory scheme can best be understood as balancing the potentially competing interests of drain-system users worried about defects in drain systems, drain commissioners who might want to overbuild or over-improve a drain system, and assessed taxpayers who may not want to incur costs associated with such improvements. [*Id.*]

In other words, MCL 280.191 requires that, if a drain system presents a problem, at least five property owners within the drainage district must petition the commissioner in writing for a repair. In this instance, plaintiff ignores that the Commissioner's assignment of laborers to work on this drain was not to make a repair, but to perform maintenance so a future problematic event could be avoided. In addition, plaintiff effectively ignores the concurrent existence of MCL 280.196(4), within the Drain Code of 1956, MCL 280.1 *et seq.*, which states:

> If an inspection discloses the necessity of expending money for the maintenance and repair of a drain in order to keep it in working order, the drain commissioner for a county drain, or the drainage board for an intercounty drain, *may without petition* expend an amount not to exceed in any 1 year $5,000.00 per mile or fraction of a mile for maintenance and repair of a drain, exclusive of inspection and engineering fees and the cost of publication and mailing. The

-7-

determination of the maximum expenditure allowed without a petition or resolution shall be based on the total number of miles of the drain and not on the actual number of miles or location of the maintenance or repair. [Emphasis added.]

As recognized by this Court:

Statutory language can be rendered ambiguous by its interaction with other statutes. Statutes that relate to the same subject matter or share a common purpose are in pari materia and must be read together as one law. The object of the in pari materia rule is to effectuate the legislative purpose as found in harmonious statutes. If two statutes lend themselves to a construction that avoids conflict, that construction should control. [*In re Project Cost & Special Assessment Roll for Chappel Dam*, 282 Mich App 142, 147-148; 762 NW2d 192 (2009) (citations omitted).]

Based on the language of MCL 280.196(4) and the absence of any evidence that the maintenance to be effectuated on the subject drain exceeded the maximum level of expenditure, plaintiff has failed to demonstrate that the Commissioner's initiation of maintenance on the drain was contrary to his statutory authority.

Plaintiff also contends that the trial court erred in granting summary disposition in favor of Wiley as the Commissioner, arguing that he was liable for the negligent performance of his drain maintenance duties, which were ministerial acts.

Although plaintiff cites to a plethora of case law, the cited cases all preceded the enactment and amendment of the GTLA, MCL 691.1401, *et seq.* The GTLA provides, in MCL 691.1407, the following, which is contrary to plaintiff's argument:

(2) Except as otherwise provided in this section, and *without regard to the discretionary or ministerial nature of the conduct in question*, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [Emphasis added.]

-8-

Here, plaintiff is claiming that Wiley is liable for general negligence based on his performance of a ministerial act as Commissioner. As set forth above, the distinction between "discretionary" and "ministerial" acts is no longer relevant to a determination of entitlement to governmental immunity in the context plaintiff asserts. MCL 691.1407(2). Instead, governmental immunity is available to an individual defendant, such as Wiley, if (a) he is "acting or reasonably believes he is acting within the scope of his authority," (b) the "governmental agency is engaged in the exercise or discharge of a governmental function," and (c) Wiley's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." *Id.*

In this instance, Wiley was acting within the scope of his authority as Commissioner in initiating maintenance of the subject drain in accordance with the Drain Code of 1956, MCL 280.1 to MCL 280.33, specifically MCL 280.2. See also MCL 280.10 and MCL 280.23. Maintenance of the drain constituted the discharge of a governmental function. "The Drain Code of 1956 . . . . represents the Legislature's attempt to codify all laws regarding drains and to provide for detailed, specific and exclusive procedures to be followed in proceedings to construct and maintain drains." *Toth v Charter Twp of Waterford*, 87 Mich App 173, 176; 274 NW2d 7 (1978). Wiley cannot be shown to be grossly negligent or "the proximate cause of the injury or damage." MCL 691.1407(2). Wiley was not present during any of the events alleged in plaintiff's complaint and was not involved in the preparation of the site or inmates for the labor to be performed. Plaintiff's allegations are insufficient to rise to the level of gross negligence for this individual, which is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a); see also *Cichewicz v Salesin*, 306 Mich App 14, 29; 854 NW2d 901 (2014). As such, plaintiff's contention that Wiley, either as an individual or as Commissioner, can be held liable for the negligent performance of his duties is without merit and is specifically precluded by MCL 691.1407(2).

Plaintiff also contends the trial court erred in granting summary disposition to the County defendants based on the applicability of the proprietary function exception to governmental immunity and the gross negligence of the individually named defendants.

For an issue to be preserved for appellate review it must be raised, addressed, and decided by the lower court. *Hines*, 265 Mich App at 443. The issue as it pertains to the applicability of the proprietary function exception to governmental immunity is preserved for appeal. While the issues of gross negligence and proximate causation are preserved for appellate review, plaintiff's arguments that rely on her expert's statements and assertions are not properly preserved and constitute an improper expansion of the lower court record. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("this Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.").

A governmental entity is immune from tort liability when exercising a governmental function, absent a statutory exception. MCL 691.1407(1); *Maskery v Univ of Mich Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003). A governmental function is defined as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). A governmental agency is not, however, immune from tort liability if it is engaged in a proprietary function. MCL 691.1413. A proprietary function is defined as "any activity which is conducted primarily for the purpose of

producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees." MCL 691.1413; *Coleman v Kootsillas*, 456 Mich 615, 621; 575 NW2d 527 (1998). Two considerations have been identified to evaluate whether an agency's primary purpose is to produce a pecuniary profit: (1) whether a profit is actually generated, and (2) where the profit (if any) is deposited and how it is spent. *Id*.

> "If the profit is deposited in the governmental agency's general fund or used to finance unrelated functions, this could indicate that the activity at issue was intended to be a general revenue-raising device. If the revenue is used only to pay current and long-range expenses involved in operating the activity, this could indicate that the primary purpose of the activity was not to produce a pecuniary profit." [*Id*. at 621-622, quoting *Hyde v Univ of Mich Bd of Regents*, 426 Mich 223, 259; 393 NW2d 847 (1986).]

Here, plaintiff contends that the monies saved by the County and the Commissioner on wages resulted in a profit, as evidenced by the refund of monies into a general fund, thus demonstrating a proprietary function. Plaintiff's argument is undercut by two statutory sources pertaining to the establishment and maintenance of drains. First, in MCL 280.51, it is clear that the establishment and maintenance of county drains is through the support and imposition of taxes and fees. Further, MCL 280.282 directs the handling of any surplus funds, permitting consolidation and investment of such funds. The funds attributable to the Commissioner and local "drainage district" must be accounted for and expenditure of these funds is restricted. Specifically:

> The principal balances of each drainage district fund shall be accounted for at all times and may only be spent by order of the drain commissioner or drainage board on expenses necessary for the operation and maintenance of the drain to which the fund belongs. [MCL 280.282(5).]

These statutory requirements belie the proprietary function asserted by plaintiff. Funds for the operation, construction and maintenance of drainage systems are procured through taxes and fees as described by MCL 280.51. The statutory restrictions on how the monies generated are expended also defeat plaintiff's allegations of profit. *Coleman*, 456 Mich at 621-622. The transfer of funds by the Commissioner referred to by plaintiff was in accordance with the dictates of MCL 280.33, which provides:

> (3) The *general fund of a county shall be reimbursed by the drain districts in which work is performed by drain maintenance employees hired by the commissioner pursuant to subsection (2)* for compensation, including the cost of fringe benefits, paid to the drain maintenance employees by the county from its general fund. The county board of commissioners may waive the reimbursement for emergency work not exceeding $800.00 performed on any 1 drain during the course of 1 year. [Emphasis added.]

The fact that monies anticipated as necessary for the expenditure on wages were not used and returned to the fund do not transform the savings realized into a pecuniary profit or equate to a proprietary function.

Plaintiff also claimed that the individual defendants were grossly negligent and, thus, they were not entitled to governmental immunity. MCL 691.1407(2). The statutory provision defines "gross negligence" to "mean[] conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

Addressing the allegations of gross negligence with regard to Wiley and Wood it is difficult to ascertain how the conduct of these individuals, who were not present at the site when the accident occurred, can be construed as either grossly negligent or the proximate cause of the decedent's injuries. Any involvement of Wiley and Wood in the decision to use inmate labor to perform drain maintenance was within the scope of their authority as the Commissioner or an employee of that office and evidence the discharge of a governmental function. MCL 691.1407(2)(a) and(b). The decision and effectuation of use of inmate labor, which is the only involvement for these two individuals, cannot rise to the level of gross negligence. Even if it could be demonstrated that there was a failure to provide adequate training for the inmate laborers, this alleged failing rises only to the level of ordinary negligence and not gross negligence. In addition, logically, it would need to be demonstrated that the training program (or lack thereof) is closely related to the ultimate injury. In the circumstances of this case, the decedent was not injured by the improper felling of the tree being worked on. Rather, he was struck and injured by another tree not involved in the felling process or removal of vegetation from the drain. Consequently there is no link between the training and the resultant injury. Similarly, the failure to provide safety equipment, such as hard hats and goggles, may be negligent. In citing to the violations indicated by the Michigan Occupational Safety and Health Administration (MIOSHA), plaintiff contends the individual County defendants' failure to address the known deficiencies constituted gross negligence. "However, this establishes a case of ordinary negligence, not gross negligence. Evidence of ordinary negligence does not create a question of fact regarding gross negligence." *Xu v Gay*, 257 Mich App 263, 271; 668 NW2d 166 (2003). "[O]ur Supreme Court has also ruled that no liability attaches to the misconduct of a governmental employee unless the tortious behavior is '*the* proximate cause' of the plaintiff's injuries, that is to say 'the one most immediate, efficient, and direct cause. . . .' " *Tarlea v Crabtree*, 263 Mich App 80, 82; 687 NW2d 333 (2004), citing *Robinson v Detroit*, 462 Mich 439, 458-459; 613 NW2d 307 (2000) (emphasis in *Tarlea*). As such, the trial court properly dismissed Wiley and Wood based on their entitlement to governmental immunity.

Charron, however, was present at the site and working beside the decedent when the accident occurred. As evidence of Charron's gross negligence, plaintiff references his failure to properly survey the site before initiating work to discover the existence of the damaged tree in the proximity of the drain; the failure to provide safety equipment, adequate equipment and training; and the MIOSHA violations and citations. First, many of the MIOSHA violations involved laxity in requiring the inmate laborers to eat prison-provided lunches, permitting them to smoke cigarettes, use cellular telephones or have contact with their families to procure clothing for use in the task. Again, even if this conduct on the part of Charron was negligent it cannot be demonstrated to meet the statutory definition of gross negligence; especially as there are no allegations that the inmates were engaged in any of these behaviors at the time of the incident.

Second, as discussed with regard to Wiley and Wood, any failure to adequately train or provide safety equipment, even if negligent, does not rise to the level of gross negligence or

demonstrate "the proximate cause" of the decedent's injury. The decedent was not struck by the tree being felled; rather, he was struck by a random tree not within the immediate work area and not designated for removal. Hence, the lack of training or proper equipment cannot be shown to be the proximate cause of the injury as the tree being worked on was felled successfully and without injury immediately attributable to its removal from the drain. See *Tarlea*, 263 Mich App at 82.

And even if Charron was negligent in failing to properly survey the surrounding area for possible hazards, such conduct does not rise to the level of gross negligence. "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence. Rather, a plaintiff must adduce proof of conduct 'so reckless as to demonstrate a substantial lack of concern for whether an injury results.' To hold otherwise would create a jury question premised on something less than the statutory standard." *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999) (citations omitted). "Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent." *Tarlea*, 263 Mich App at 90. As recognized by this Court:

> The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Id.*]

Plaintiff did not adduce proof that any failure to survey the surrounding area constituted gross negligence by Charron, who was actually working in that same area and was within three feet of the decedent when the injury occurred. Therefore, the trial court's decision that the individual County defendants were entitled to governmental immunity was not in error.

Finally, plaintiff contends that Fahley is liable on her claims based on concepts of premises liability and that the trial court erred both in granting summary disposition to Fahley and in declining to grant plaintiff permission to amend her complaint to include a claim of active negligence pertaining to Fahley's farming practices. This Court reviews for an abuse of discretion a trial court's denial of a motion to amend a complaint. *Tierney v Univ of Mich Regents*, 257 Mich App 681, 687; 669 NW2d 575 (2003).

Fahley owns a 60-acre farm. The Emmet Drain bisects the center of the property. Fahley denied engaging in any farming activity within the easement where the drain is situated. Fahley acknowledged using a "ditcher blade" attached to a tractor "to cut across the ditch going to the . . . drain" for additional field irrigation. Fahley estimated the ditcher blade would penetrate approximately 18 inches into the soil and that the irrigation ditch he initiated would be approximately four feet in width, but denied the necessity of going "through the trees" to reach the drain or tap into it or digging a drainage ditch within 250 feet of the site of the decedent's injury. Fahley previously received permission from the County to have vegetation or debris

removed from the drain and hired a contractor to perform the work. Fahley denied having any authority or control over the easement, indicating he could not preclude any County work crew from entering the property because "[i]t is an easement." Fahley denied any recollection of seeing or observing the condition of the tree that struck the decedent before the incident.

Plaintiff's claim for premises liability "is conditioned upon the presence of both possession and control over the land." *Kubczak v Chem Bank & Trust Co*, 456 Mich 653, 660; 575 NW2d 745 (1998) (citation omitted). The duty a landowner owes to a visitor is dependent upon the status of the visitor at the time of the injury. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). "An 'invitee' is 'a person who enters upon the land of another upon an invitation that carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception.' " *Id.* at 596-597 (citation omitted). In general the duty owed by an invitor to an invitee is the duty "to exercise reasonable care to protect them [from] an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). The liability attributable to an invitor devolves from active negligence, based on an unreasonable act or omission, or through a condition existing on the land of which the invitor was aware or should have known. *Clark v Kmart Corp*, 465 Mich 416, 419; 634 NW2d 347 (2001); *Hampton v Waste Mgmt of Mich, Inc*, 236 Mich App 598, 604; 601 NW2d 172 (1999). This duty does not extend to conditions which are deemed open and obvious. *Ghaffari v Turner Constr Co*, 473 Mich 16, 21; 699 NW2d 687 (2005); *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500; 418 NW2d 381 (1988).

"The owner of the fee subject to an easement may reasonably use the land for any purpose not inconsistent with the easement owner's rights." *Morrow v Boldt*, 203 Mich App 324, 329-330; 512 NW2d 83 (1994). However, it is the easement owner and not the owner of the fee subject to the easement that has the duty to maintain the easement in a safe condition to prevent injuries to third parties. *Id*. In this instance, Fahley did not own or control the relevant area of the drain easement. Plaintiff's expert, Dr. James Kielbaso, acknowledged that Fahley was not present during the events that occurred and acknowledged that Fahley "would have had no control." As such, plaintiff is unable to demonstrate a duty owed by Fahley to the decedent which clearly defeats plaintiff's claim of simple negligence.

Plaintiff's expert submitted a preliminary affidavit. In the affidavit, Kielbaso alleged he obtained a sample from the elm tree that caused the decedent's death "and concluded it was dead at least five (5) years at the time it struck" the decedent. Kielbaso also opined that the tree that injured the decedent was an open and "obvious" hazard based on the absence of any bark and noted that it "would stick out like a sore thumb." In determining if a danger is open and obvious the pertinent question is whether "an average user with ordinary intelligence would have been able to discover the danger and the risk presented upon casual inspection." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 478; 760 NW2d 287 (2008) (citation omitted). The fact that a danger was open and obvious is not relevant to a claim premised in ordinary negligence. *Hiner v Mojica*, 271 Mich App 604, 615; 722 NW2d 914 (2006). Even if it could be demonstrated that Fahley possessed and controlled the premises where the drain is situated, and this Court is not suggesting that it can be demonstrated, a claim of premises liability would be barred by the open and obvious doctrine.

-13-

Kielbaso filed a second affidavit following his review of Fahley's deposition testimony. In the second affidavit, Kielbaso averred, in pertinent part:

> 3.      *If* an individual had been operating tractors, including, but not limited to pulling a ditch blade or disk and packer, in the vicinity of the tree which struck Mr. James Dudley and delivered a fatal injury to him, then the vibrations caused by the operation of said tractors *could have* weakened the tree causing it to fall more easily on the date that it struck Mr. James Dudley.

> 4.      *If* an individual had been pulling a ditch blade within the vicinity of the tree which struck Mr. James Dudley and delivered a fatal injury to him, then the blade *could have* cut the roots once or several times and expedited the death and weakness of the tree.  [Emphasis added.]

Based on these averments, plaintiff sought to amend her complaint to allege an active negligence claim.  Although a trial court should freely grant leave to amend, MCR 2.118(A)(2), leave to amend should be denied where amendment would be futile. *Miller v Chapman Contracting*, 477 Mich 102, 106; 730 NW2d 462 (2007).  Fahley's testimony was clear that, although he did both farm and irrigate the property, there was no suggestion that he came within any significant distance of the tree that caused the injury or that his farming and irrigation work actually facilitated the death of that tree.  Plaintiff relies solely on the averments of Kielbaso in asserting that evidence exists to suggest a claim of active negligence, necessitating the amendment of her complaint.  However, Kielbaso's averments are mere speculation and conjecture, which are "insufficient to raise a material question of fact and overcome defendants' summary disposition motion." *Karbel v Comerica Bank*, 247 Mich App 90, 107; 635 NW2d 69 (2001) (citation omitted).  As discussed by our Supreme Court in *Skinner v Square D Co*, 445 Mich 153, 174; 516 NW2d 475 (1994):

> Taking the record evidence in the light most favorable to the plaintiff, we conclude that the record facts do not manifest a genuine issue of factual causation. The offered evidence only established that an accident took place.  Michigan law does not permit us to infer causation simply because a tragedy occurred in the vicinity of a defective product.  The plaintiffs were required to set forth specific facts that would support a reasonable inference of a logical sequence of cause and effect.  Instead, the plaintiffs posited a causation theory premised on mere conjecture and possibilities.

Plaintiff's contention that, based on Kielbaso's averments, she should be permitted to amend her complaint to include a claim of active negligence is not justified based on the speculative nature of her expert's assertions.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

-14-